## PLATT v. LOTT and others.

An assignment, in trust for the benefit of creditors, of all a debtor's property, which was therein stated to be "more fully and particularly enumerated and described in a schedule annexed," passes property not mentioned in the schedule.

The case of *Wilkes* v. *Ferris* (5 *John.*, 335), examined and distinguished.

APPEAL from a judgment of the Supreme Court, at general term in the second district, refusing a new trial upon appeal of the defendant from judgment on a verdict at the circuit in Kings county.  The facts are stated in the following opinion.

*James L. Campbell,* for the appellant.

*William Stanley,* for the respondent.

SELDEN, J.   This action was brought to recover possession of certain personal property taken by the defendant, Lott, as sheriff of the county of Kings, upon an execution against Abraham R. and Cornelius R. Hunt.   The plaintiff claimed the property by virtue of a voluntary assignment, made to him by A. R. & C. R. Hunt, in trust for the payment of debts; and the question presented is, whether the title to the property levied upon by the sheriff was vested in the assignee.

The deed of assignment commenced by reciting that the parties of the first part were "indebted to divers persons in divers sums of moneys," and that they were "desirous of providing fully for the payment thereof, by an assignment

Platt *v.* Lott.

of all their property and effects for that purpose." It then proceeded to assign and transfer to the plaintiff the property of the assignors, described in terms as follows: "All and singular the lands, tenements, hereditaments and appurtenances, goods, chattels, stocks, promissory notes, debts, choses in action, claims, demands, property and effects of every description, belonging to the said parties of the first part, or in which they have any right and interest whatsoever; the same being more fully and particularly enumerated and described in a schedule thereof, hereunto annexed, marked schedule A." By a subsequent clause the assignee is authorized "to ask, demand, recover and receive, of and from all and every person and persons, all the property, debts and demands belonging and owing to the said parties of the first part," &c.

The schedule annexed to the assignment embraced property to the amount of several thousand dollars, but did not include the property in controversy. The assignment was declared to be in trust to sell and dispose of the property, to collect the debts, and to apply the proceeds; first, to defray the expenses of executing the trust, and then to the payment of all the debts of the assignors in full, if the proceeds were sufficient for that purpose, and if not, then *pro rata*, according to their respective amounts. No preferences were given. The assignment was executed on the 27th of March, 1854, and it was admitted upon the trial that the property in question was actually delivered by the assignors to the plaintiff on the following day, and was in his possession when it was levied upon by the defendant, Lott. It is contended, on the part of the defendants, that the general words of the assignment are limited and controlled by the specifications contained in the schedule, and that nothing whatever passed to the assignee, except the property enumerated therein.

In construing contracts, deeds and other written instruments, resort is had to a variety of legal rules, for the

purpose of aiding in their interpretation; but all other rules are subordinate to that primary rule which requires that every such instrument shall be construed according to the intention of the parties. Whenever, from an examination of the writing itself, and on a comparison of its various parts, the intent with which it was executed can be clearly ascertained, that intent is to govern, whether the construction to which it tends, is, or is not, in accordance with those minor rules, which are merely auxiliary to the one great paramount rule referred to.

Hence, notwithstanding the ordinary rule, that general words are controlled in their operation by those which are more particular and specific, if upon looking at the assignment in this case we are able clearly to see that it was the intent of the assignors to convey to the assignee their whole property, we are bound to give effect to that intent. Were this question to depend solely upon the main clause in the instrument, I should have very little doubt as to the design with which it must have been executed. Not only the general terms in which that clause is couched, embracing, as they do, all the property of the assignors, both real and personal, but the emphatic language with which, as we have seen, it concludes, viz., "of every description, belonging to the said parties of the first part, *or in which they have any right or interest whatsoever*," would seem to manifest a plain intent to convey everything which the assignors possessed. It is true this clause is followed by the words, "the same being more fully and particularly enumerated and described in a schedule," &c. This, however, by no means indicates an intention to qualify or limit the broad and comprehensive language previously used. A schedule would of course be necessary, as a matter of convenience, and as a guide to the assignee; and the provision for its annexation, although it is thereby made a part of the assignment, does not warrant the inference that it was intended that if any portion of the property of the assignors should be omitted, which might

Platt *v.* Lott.

well occur through accident or inadvertence, the title to such property should not pass to the assignee.

This construction is strengthened and confirmed, not only by the consideration that the assignment is made not for the benefit of particular creditors, but of all the creditors equally, but also by the fact that it expressly recites that the assignors were desirous of providing for the payment of their debts, "by an assignment of *all their property* and effects for that purpose."

The case of *Wilkes* v. *Ferris* (5 *John.*, 335) differs materially from that now before the court, both in the language of the assignment itself and in the circumstances attending it. The language of the granting clause, in that case, is as follows: "All the goods, property, wares, merchandises, &c., belonging to and now due and owing to the said Henry Cheviot (the assignee), or to which and in which he has any right, property, claim or demand, which said goods, wares and merchandises, *hereby granted and sold*, are particularly described and enumerated in the schedule A," &c. Here the clause in respect to the schedule is more intimately connected with the granting clause than in the present case. Besides, the words "hereby granted and sold" operate as words of limitation, and expressly confine the transfer to such goods as are mentioned in the schedule. It is a material circumstance, too, that the assignment in that case was not made for the benefit of all the creditors of the assignor, but of particular creditors only; and the law will not favor a construction which would appropriate the whole of a debtor's property to the payment of a portion only of his debts.

The case of *United States* v. *Howland* (4 *Wheat.*, 108), cited by the defendant's counsel, contains nothing which goes to sustain his position. In that case, the assignment did not purport to convey all the property of the assignors, but was, in terms, confined to the "estate and effects contained in the schedule" annexed. It embraced, however, a

power of sale, in which the words used were : "*all the property* of them, the said Shoemaker & Travers, and Jacob Shoemaker," the assignors; and it was contended by the counsel that the broad terms used indicated an intention on the part of the assignors to transfer their whole estate. But the court held, that the words of the power were "explained and limited by those which follow, so as to show that the word 'all' is used in reference *to the schedule,* and means all the property in the schedule." The case evidently has no bearing upon that we are considering.

The conclusions to which I have arrived render it unnecessary to inquire whether the title to the property in question would, under the circumstances, have passed to the plaintiff by the delivery of it to him by the assignors on the day after the assignment, as in my view it was clearly embraced in and was transferred by that instrument.

It follows that the judgment of the Supreme Court should be affirmed.

All the judges concurring,

Judgment affirmed.