## Nelson B. Nye and Others v. Caleb Van Husan and Another.

A schedule, detailing at large the property conveyed, is not necessary to the validity of an assignment for the benefit of creditors.

The necessity or effect of a schedule, if one is referred to in an assignment, is to be determined by the intent of the parties as gathered from the whole instrument, and which, when ascertained, is to govern in the construction of assignments as in the case of other written instruments.

An assignment which clearly manifests an intention on the part of the assignors to transfer all their property to the assignees, and that it shall have immediate operation, will have that effect, though to the general terms describing the property are added the words "as the same is more particularly described in a schedule *proposed* to be hereafter annexed," and which schedule is not annexed.

The reservation to the assignors of a power to perfect the schedules attached to an assignment, will in no respect impair or restrict the assignment itself.

Where an honest intent can as clearly be inferred from the terms of an assignment as a fraudulent one, the courts are not at liberty to infer the latter.

A clause in an assignment authorizing the assignees to "sell and dispose of the" assigned property, "either at public or private sale, as they in their judgment may deem best, and upon such terms and conditions as they may deem most advisable, and for the best interests of the creditors, converting the same into money," &c., will not be construed as conferring a power to sell upon credit.

A preference of individual debts in a copartnership assignment does not, of itself, independent of an actual intent to defraud, render the assignment void.

6 MICH. — W.

NYE v. VAN HUSAN.

A clause in an assignment, by which the assignors nominate and appoint the assignees, "their executors, administrators, or assigns, their, or each of their true and lawful attorneys, irrevocable, with full power and authority to do and perform all acts, matters, or things which can or may be necessary in the premises, as fully and completely as the said [assignors] might or could do were these presents not executed; and attorney one or more under them to make, nominate and appoint, as they may deem necessary, with full power of substitution and revocation," &c., does not confer upon the assignees the power to delegate their trust, and is proper and unobjectionable.

*Heard December 1st and 2d, 1858.    Decided May 19th.*

Error to Washtenaw Circuit Court;

This was an action of replevin for a quantity of merchandise, brought by Van Husan and Bickford, who claimed the goods as assignees of Daniel D. Wallace and Edwin W. Wallace, partners under the name of D. D. Wallace & Co. A copy of the assignment, which constitutes a part of the bill of exceptions, is given below.

The defendant Nye was sheriff of Washtenaw county, and (his co-defendants Crissey and Perkins assisting him) had seized, and claimed that he was entitled to hold, the goods, under and by virtue of sundry writs of attachment in favor of different plaintiffs, and against the said Daniel D. and E. W. Wallace, issued out of Washtenaw Circuit Court, subsequently to the date of their above mentioned assignment.

On the trial in the circuit court, the jury found a verdict in favor of the plaintiffs below, upon which judgment was afterwards entered in their favor.

To reverse this judgment, the defendants below removed the cause into this Court by writ of error, accompanied by bill of exceptions.

From the exceptions, it appears that, upon the trial, the counsel for the plaintiffs proved the execution of an assignment, made November 2d, 1854, by Daniel D. Wallace, and Edwin W. Wallace to the plaintiffs, and offered the same in evidence without a schedule of property; to the admission of which the defendant objected, for the following reasons: 1st, Because the assignment so referred to the schedule to

be annexed as to render that necessary to the conveyance of any property, and that no property could pass without such schedule; 2d, Because the assignment was void as not purporting to convey all the assignors' partnership property; 3d, Because the assignment was void, as allowing the assignors power to change the schedules; 4th, Because the assignment was void, as allowing the assignees to sell on credit; and, 5th, Because the assignment was void, as allowing the assignees to delegate their trust without restriction.

Which objections the Court overruled, and admitted the assignment to be read in evidence; and defendants excepted.

The plaintiffs offered as a witness *John A. Laird*, who was admitted to be a member of the firm of Draper, Knox & Co., and a preferred creditor under the assignment; and the defendants objected to his being sworn, on the ground that the suit was prosecuted for his immediate benefit; but the Court admitted the testimony under the exception.

The plaintiffs then introduced evidence to prove the taking possession, by the assignees, of the goods in certain stores and the ashery mentioned in the assignment; and that the assignees made an inventory of said goods and property, embracing certain property of the assignors not in any of the stores or the ashery, and which was not delivered to the assignees; and that the assignors took no part in designating said property or making the inventory; and that, after the goods replevied in this cause were taken by the defendants on attachment, the inventory was attached to said assignment by the assignees, and marked " Schedule A., referred to in the foregoing assignment."

The plaintiffs proved the taking of the goods by the defendants, by virtue of several writs of attachment, issued out of the Circuit Court for the county of Washtenaw, in favor of creditors of said D. D. Wallace & Co., who are mentioned in the assignment.

The defendants then introduced testimony tending to. show fraud in the making of said assignment, and that it was made with a view to hinder, delay, and defraud the creditors of said D. D. Wallace & Co.; that the said co- partnership had property not included in said stores, ashery, or schedule, and that some of the debts preferred were private debts of Daniel D. Wallace; and also proved the value of said property replevied, and the amount of their special interest therein.

The plaintiffs having given rebutting evidence, and rested, the defendants then asked the Court to charge the jury, —

1st. That the said assignment, if valid, only became. operative on the annexation of the schedule of the property, and that any rights of the defendants, attaching before such annexation, took precedence of it:

2d. That such schedule should have been made by the assignors, or by the assignors and assignees jointly; and a schedule made by the assignees, alone, was invalid:

3d. That no property, except such as was specifically referred to in the assignment, could pass before the execu- tion and annexation of the schedule of property:

4th. That upon the assignment, as drawn and executed without the schedule, the presumption arises that the assignors had property not conveyed, and that it was the duty of the plaintiffs to rebut that presumption:

5th. That, upon the assignment and schedule, a pre- sumption arose that the assignors had property not as- signed, and it was the duty of plaintiffs to rebut this pre- sumption:

6th. That it was unlawful for the assignors to make. preferences in favor of private debts of either of the co- partners, and that such preferences would avoid the as-. signment:

7th. That said assignment was void in law.

All which instructions the Court refused to give; and instructed the jury that the said assignment was valid to.

convey, and purported to convey, the whole partnership property of D. D. Wallace & Co., from its date, without the schedule of property, and that no presumption arose, from the assignment itself or the schedule, that there was any property not conveyed : That it was lawful to prefer private debts in an assignment of partnership property, and that said assignment was, in law, a good and valid instrument upon its face : That the Court would not pronounce the deed of assignment void for the reasons urged against it, yet it was competent for the jury to take them into consideration in deciding the question of fraud in fact.

To all which instructions and refusals, the defendants excepted.

The circuit judge, under the charge and with the directions aforesaid, left the case to the jury, who returned a verdict for the plaintiffs.

The following is a copy of the assignment:

"*This Indenture*, made the second day of November, in the year eighteen hundred and fifty-four, by and between Daniel D. Wallace and Edwin W. Wallace, copartners in trade, in business under the name and style of D. D. Wallace & Co., of the village of Saline, county of Washtenaw, and state of Michigan, of the first part, and Caleb Van Husan and Joseph Bickford, of the city of Detroit, county of Wayne, and state of Michigan, of the second part, *Witnesseth*,

" Whereas, the said copartnership of D. D. Wallace & Co. is largely and justly indebted in sundry considerable sums of money to various persons in the states of Michigan, Massachusetts, and New York, and by reason of the late severe and protracted embarrassment in business affairs, has been wholly unable to discharge the same with punctuality or in full, and being desirous of securing to their several creditors the possession of whatever property and effects they stand seized of, at as early a day as possible, and to prevent an undue sacrifice of the same:

"Now, therefore, this indenture witnesseth, that the said parties of the first part, in consideration of the premises above recited, and of five dollars to them in hand paid by the said parties of the second part, the receipt whereof is hereby acknowledged, have granted, bargained, sold, assigned, released, transferred, and set over, unto the said parties of the second part, and by these presents do so grant, bargain, sell, assign, release, transfer, and set over, unto said parties of the second part, and to their heirs and assigns for ever, all and singular the goods, chattels, merchandise, bills, bonds, notes, books of account, and bank accounts, claims, demands, choses in action, judgments, evidences of debt, and personal property of every name and nature whatsoever, of the said party of the first part, as the same is more particularly described in the schedule proposed to be hereafter annexed to this instrument, marked "Schedule A.," and especially including all the stock and merchandise in the three several stores of the party of the first part —one in the building on Chicago street, in the village of Saline, known as the Burnham Store, including the boot and shoe shop appurtenant thereto, and all the stock and tools comprising the same; one on the same street, in said village, being the first door west of William H. Davenport's; and one in the village of Manchester, in said county of Washtenaw, and the building in which the same is kept, under the care and charge of David Bowen, the head clerk thereof; together with all the notes, accounts, dues, and demands belonging to the business of said three firms, as herein already intended to be conveyed, together with all the ashes on hand belonging to said Daniel D. Wallace & Co., party of the first part, at the ashery three miles west of Saline aforesaid; the said party of the first part hereby reserving the right and privilege of perfecting the Schedule A. above referred to, showing the exact amount of said personal property hereby intended to be conveyed, at some future time, if necessary:

"To have and to hold the same, and every part and parcel thereof, unto the said parties of the second part, their heirs, executors, admininistrators, and assigns, in trust nevertheless, and to and for the following uses, intents and purposes, that is to say:

"That the said party of the second part shall at once, or as soon as practicable, take possession of all and singular the personal property, effects, rights in action, hereby assigned, and sell and dispose of the same, either at public or private sale, as they in their good judgment may deem best, and upon such terms and conditions as they may deem most advisable, and for the best interest of the creditors of said party of the first part, converting the same into money, and also to collect all and singular the debts, due-bills, notes, demands, choses in action, judgments, claims, and demands, or so much thereof as may prove collectable; and thereupon to execute and deliver all necessary acquittances and discharges, and by and with the proceeds of such sale and collection (*First*) the said party of the second part shall first pay and disburse all the just and reasonable expenses, charges, and disbursements of carrying into effect this assignment, and all other charges that may become necessary for the purposes aforesaid, until the same shall all be sold and disposed of and converted into money: and by and with the residue or net proceeds and avails of such sales and collections, that said parties of the second part (*Secondly*) shall pay and discharge in full all the several and respective debts, notes, sums of money, or accounts, due, or to grow due, from the said parties of the first part, or for which they are liable from the said parties of the second part, and the several other persons and firms designated in the schedule hereto annexed marked "B.," together with all interest money or moneys, to grow due thereon (the said party of the first part reserving the right to correct the amounts appearing in said schedule, should the same, as stated, be found incorrect), and if said net proceeds shall not be found sufficient to pay and discharge the same in full, then such net proceeds and

avails shall be distributed *pro rata*, share and share alike, among the said several persons and firms named in the said schedule "B.," according to the amount of their several and respective claims as the same shall be finally and correctly established: (*Third*) by and with the residue and remainder of said net proceeds and avails, if any there shall be, the said parties of the second part shall pay and discharge all the other copartnership debts and liabilities whatsoever, and now existing, whether due, or hereafter to become due, and the principal part (if not all) of which are set forth in schedule hereto annexed marked "C.," provided such remainder shall be found sufficient for the purpose, and, if insufficient, then the same shall be applied *pro rata*, share and share alike, to the payment of said debts, demands, and liabilities, according to their several and respective amounts, the said parties of the second part reserving the right to correct in detail the said list or schedule " C.," should the same, on close examination of their books, be found incorrectly stated in amount or otherwise: (*Fourth*) by and with the residue and the remainder of the said net proceeds and avails, if any there shall be, the said parties of the second part shall pay and discharge all the private and individual debts of the said parties of the first part, or either of them, whether due or to grow due, provided such remainder shall be sufficient for that purpose, and, if insufficient, then the same shall be applied *pro rata*, share and share alike, to the payment of the said debts, according to their respective amounts, whatever the same on examination shall be found to be:

"And for the better execution of this instrument, and the trusts and duties thereby conferred, the said parties of the first part do hereby nominate and appoint the said parties of the second part, their executors, administrators, or assigns, their or each of their true and lawful attorneys, irrevocable, with full power and authority to do and perform all acts, matters, or things which can or may be necessary in the premises, as fully and completely as the said parties of the first part, or either of

them, might or could do, were these presents not executed; and attorney one or more under him to make, nominate, and appoint, as he deem necessary, with full power of substitution and revocation, hereby ratifying and approving all and every thing whatever which our said attorneys shall do, or cause to to be done in the premises.

"*In Witness Whereof*, We have hereunto set our hands and seals, on the day and year first above written." "D. D. WALLACE. [L. S.]" "E. W. WALLACE. [L. S.]" In the presence of "THERON FORD," "SAMUEL H. HARTWELL."

"We hereby accept the trust conferred on us by virtue of the foregoing instrument, and assume the discharge of the duties growing out of the same." "November 2, 1854." "CALEB VAN HUSAN." "JOSEPH BICKFORD."

The only schedules attached to the assignment were schedule B., containing a list of preferred, and schedule C., containing a list of non-preferred, creditors. They are not given here, because unnecessary to a full understanding of the case.

*S. T. Douglass*, for plaintiffs in error:

1. An assignee under an assignment, whether good or bad on its face, is not now regarded as a *bona fide* purchaser.— *Pierson v. Manning*, 2 *Mich.* 445; *Burr. on Ass'ts*, 439, *and cases cited.*

2. This assignment is bad on its face.

*a.* It contains no sufficient description of property, without recourse to the schedule; that being referred to for identification. Where a schedule is so referred to, nothing passes except what is therein mentioned, and until appended there is no description. General words of description in a deed are always limited by such a specification, and nothing passes excepting what is so specified.—5 *Eng. L. & Eq.* 471; *Burr. on Ass'ts*, 243, 327; 5 *Johns.* 335; 12 *Pick.* 22; 21 *Pick* 503; 14 *Barb.* 39; 10 *N. H.* 358; 11 *N. H.* 471; 6 *Barb.* 470; 2 *Wis.* 60, 61.

*b.* It does not purport to convey all the property of the assignors, although it purports to be, and is, a general assignment. With such a reference to the schedule as is contained here, the presumption arises that there is property not embraced in it, even if the references to the stores and ashery were broad enough to convey every thing there; or, in other words, even if the reference to the schedule did not limit them.—*Burrill*, 244, 245; 5 *Wheat.* 107; 5 *Mason*, 280; 8 *Md.* 418.

The most that could be claimed by assignors would be that they might show affirmatively that all their property was actually covered by the assignment. But this the Court held they need not do.

*c.* This assignment is bad because it allows the assignors to change the schedules. If the assignment contained a conveyance of all the property, without reference to the schedule, then the power retained might be regarded as one merely to rectify clerical and numerical errors. But when the schedule, as here, is descriptive, and necessary to point out what is intended to be conveyed, a power to alter it amounts to a power to make material changes in the assignment, and renders it void.—1 *Am. Lead. Cases*, 97; *Burr. on Ass'ts*, 333, 234, 209, 212, 235.

*d.* The assignment is void because it allows sales *on credit.* The words "*terms and conditions*" are always applied, in common parlance, to the time and mode of payment, and such is the only sensible construction here, when every other contingency is expressly provided for.—*Burr. on Ass'ts*, 197, 452; 21 *Pick.* 185; 1 *Metc.* 79; 2 *Duer*, 533; 2 *Wis.* 59; 1 *Wis.* 286.

*e.* The assignment provides for an unlimited delegation of powers. That assignees should have power to act through agents in ordinary business matters, is well enough, but to give them power to appoint attorneys, not only with their own broad powers, but with power of substitution, is, we submit, a most dangerous excess.

3. The assignees could only hold (as against creditors who attach) such property as is delivered to them under the assignment.—*Burr. on Ass'ts*, 298; *Comp. L.* §3188.

And they could not lawfully make the schedule. As part of the assignors' deed, the assignors must either make it, or at least cause it to be made, and know its contents, and adopt it.

4. The preference of a private debt is illegal.—1 *Sandf. Ch.* 348; 3 *Barb., Ch.* 46; 25 *Vt.* 351.

The whole question of fraud in fact, including this matter, was submitted by the Court to the jury.—24 *Barb.* 127.

*G. V. N. Lothrop*, for defendant in error:

1. Such a construction must be given the assignment as will fairly carry into effect the intention of the parties so far as it can be collected from the whole instrument. Where two constructions are admissible, that should be preferred which will render it legal and operative, rather than that which would render it void.—22 *Wend.* 483; 17 *Pick.* 181; 11 *Wend.* 187; *per Mitchell J.*, 18 *Barb.* 550; *per Parker J.*, 17 *Barb.* 392.

2. The assignment in question was clearly intended to operate *in presenti*. It transfers in the most comprehensive terms all the partnership property, and provides for immediate possession by the assignees. A schedule was not necessary to define the property assigned—the assignment itself does not make it so, and the reference therein to a schedule means no more than if the words had been "of which it is proposed that a particular schedule shall be made out hereafter and annexed hereto."—See 15 *Conn.* 152; 22 *Pick.* 468; 2 *Paige*, 311; 14 *M. & W.* 47. The acts of the parties cotemporary with the making of the contract, or nearly so, may be looked at to aid in its interpretation (2 *Cush.* 283); and the proof of their acts shows this to have been their construction of the instrument.

3. Even if the assignment did not purport to convey all the partnership property, the deed would not be void unless property was withheld with actual fraudulent intent. — 24 *Barb.* 120.

4. The right reserved in the assignors to perfect the schedules did not invalidate the deed. Any reservation, directly or indirectly *for the benefit of the assignor, to the prejudice of the creditors,* avoids the deed. — 4 *Ired.* 204; 11 *Wend.* 202; 15 *N. Y.* 144; and see 16 *N. Y.* 563. But the reservation in this deed does not fall within the principle. It reserved a right simply to look over the schedule to be made, to see if it was perfect, *if this should be found necessary.* It was a reservation, not for the benefit of the assignors primarily, but for the benefit of the creditors.

5. The assignment did not authorize the assignees to sell on credit. — 11 *Barb.* 198; 21 *Barb.* 65; 21 *Barb.* 128; 1 *Kern.* 304; 3 *Kern.* 215.

6. As to the right to make preferences of individual debts, there is some conflict of cases. There are two cases which seem to imply a denial of [the right. — 2 *Sandf. Ch.* 448; 4 *Sandf. S. C.* 252. On the other hand, the following cases seem to affirm the right. — 3 *Barb. Ch.* 46; 1 *Clarke Ch.* 193; 1 *Liv. Law Mag.* 442. But whatever may be the law on this subject, it has always been held that such a preference did not, in law, avoid the assignment; that the preference was illegal, *not under the statute, but only under the equitable rule which devotes partnership property primarily to the satisfaction of partnership debts.* — 11 *Wend.* 206; 3 *Barb. Ch.* 46; 4 *Sandf. S. C.* 298; and see 15 *N. Y.* 96.

But it is to be further observed that the expression of opinion of the Court on this point was, so far as this case is concerned, a mere abstract opinion. The assignment does *not prefer* private debts.

If any of the creditors named in schedules B. or C.

were in fact individual creditors, that would appear only in evidence. It would indicate. either a mistake on the part of the assignors, or else a fraudulent design to palm individual debts off for partnership debts. If there was a mistake, it would not vitiate; if on the other hand, it was the result of a fraudulent *design*, it would bring the assignment directly within the statute, and this would be a question of fact for the jury.

Now, this was the only way this question could properly arise in this case. No such point was, in fact, made on the trial. No request to instruct the jury with reference to such a case was asked by the defendant's counsel. The Court was asked to instruct the jury that it was unlawful to prefer the private debts of the copartners, which, under this assignment, was an abstract question.

MARTIN Ch. J.:

It is well settled that a schedule detailing at large the property conveyed, is not necessary to the validity of an assignment. — See *Hollister v. Loud*, 2 *Mich.* 309; *Rundlett v. Dole*, 10 *N. H.* 458. It is sufficient to constitute a legal transfer that the property is described with reasonable certainty. If then a schedule be referred to in an assignment, it may, or may not, be a necessary part of such instrument, for the purpose of ascertaining what property is conveyed; and it may, or may not, have the effect to restrict the general words of the grant, according to the context, and the mode in which reference is made to it. No arbitrary rule can therefore be laid down respecting the necessity or effect of a schedule, if one be referred to, but these are to be determined by a consideration of the whole instrument, from which the intent of the parties making it is to be gathered; and such intent, when ascertained, is to control its construction in this respect, as in all others.

A great diversity exists in the reports respecting the construction of debtors' assignments, and a disposition has been

not infrequently manifested to construe them with great technical nicety, sometimes approaching illiberality. This tendency has led to the application of particular and subordinate rules of construction in some instances, in disregard or forgetfulness of those paramount rules which control the interpretation of all other written instruments. The principle most generally applied to the construction of this class of instruments is this: "That if a general clause in an instrument be followed by special words which accord with the general clause, the deed shall be construed according to the special matter." But in the application of this principle care is not always taken to observe how far the special words accord with the general clause, nor the manner of their application to it; and general words have been controlled and limited in their operation by special words, from an arbitrary application of this principle, although at the obvious sacrifice of the intent of the assignor, as manifested by the whole instrument. The diversity also which exists in the forms of assignments, their subjects, and the manner in which schedules have been referred to, has induced some errors from want of care in observing their dissimilarities.

"In construing contracts, deeds, and other written instruments," says Selden J., in *Platt v. Lott,* 17 *N. Y.* 478, "resort is had to a variety of legal rules for the purpose of aiding in their interpretation; but all other rules are subordinate to that primary rule which requires that every such instrument should be construed according to the intention of the parties. Whenever, from an examination of the writing itself, and on a comparison of its various parts, the intent with which it was executed can be clearly ascertained, that intent is to govern, whether the construction to which it tends is, or is not, in accordance with those minor rules, which are merely auxiliary to the one great paramount rule referred to. Hence, notwithstanding the ordinary rule, that general words are controlled in their operation by those which are more particular and specific, if, upon looking at the assignment

in this case, we are able clearly to see that it was the intention of the assignors to convey to the assignees their whole property, we are bound to give effect to that intention."

The cases cited will be found, upon careful examination, not to conflict with this rule, while *Driscoll v. Fiske*, 21 *Pick.* 503, expressly recognizes it. — See also *Burr. on Ass'ts* (2 *ed.*), 265, 268.

An examination of the deed of assignment from Wallace & Co., and a comparison of its different provisions, leave no doubt in our minds as to the design with which it was executed. It commences by a recital of the reasons which induced it, and the object sought to be accomplished by it; the reasons being the heavy indebtedness of the assignors, and their utter inability to discharge it with punctuality or in full; and the object being to secure their creditors the possession of whatever property and effects they were seized of, at as early a day as possible, and to prevent undue sacrifice of the same. It then, in general terms, conveys all their personal property and choses in action, *of every name and nature whatever*, to the assignees "as the same is more particularly described in the schedule *proposed* to be hereafter annexed to this instrument, marked schedule A., and especially including all the stock and merchandise" in their several stores, describing their locality, and "other property, accounts, debts, and demands as herein already intended to be conveyed," together with all the ashes on hand at their ashery, &c. It further requires and empowers the assignees to take immediate possession of the property and choses in action assigned, and to appropriate them to the payment of their debts. These provisions clearly manifest an intention by the Wallaces to assign all their property for the purposes expressed in the instrument, and that it should presently operate. And such, we think, was its effect, notwithstanding the reference to a schedule. And so it was evidently regarded by the parties; for the proof is that the assignees did immediately reduce

the assignors' property to possession, as well that specially designated, as other property not mentioned but obviously regarded as embraced in the general language of the assignment.

But the reference to the schedule is claimed to render one necessary to the conveyance of any property. The difficulty in this case, is from the reference being made in the present tense. If it had been " as the same *is to be* more particularly described," or had a provision been inserted that a schedule should be. made and annexed, no doubt would have arisen respecting the present operation of the assignment, nor of the property covered by it. Such we think to be the true purport of this reference, Language is to be construed by its context; and no one can read this instrument without arriving at the conclu- sion that the schedule was contemplated to be subsequently made, and was not in existence when the assignment was drawn up. The inartificial manner in which this reference is made can not affect the general and controlling language of the instrument, but such reference should be read so as to accord with it. Now if, as we have already shown, a schedule is not necessary to the validity of an assign- ment, and if, when one is referred to, it will become neces- sary or not, according as the language of the whole in- strument shall demonstrate such necessity to determine what property is conveyed, it follows that the absence of such schedule, although referred to, does not necessarily render the instrument incomplete, nor authorize the pre- sumption that the assignors had property not conveyed by it.

In *Platt v. Lott* (*supra*), where the general words of as- signment were no stronger than those in the one before us, the reference to the schedule was as follows: "The same being more fully and particularly enumerated and described in a schedule thereof hereunto annexed," &c.: the assign- ment, from a consideration of the whole instrument, was

held good to convey all the assignor's property, whether enumerated in the schedule or not; and the Court says, "This (the reference to the schedule) however by no means indicates an intention to qualify or limit the broad and comprehensive language previously used. A schedule would, of course, be necessary as a matter of convenience, and as a guide to the assignee; and the provision for its annexation, although it is thereby made a part of the assignment, does not warrant the inference that it was intended that if any portion of the property of the assignors should be omitted, which might well occur through accident or inadvertence, the title to such property should not pass to the assignee."

In the case before us, the reference is to a schedule *proposed to be annexed;* and when this is read in connection with the declared object of the assignment, the desire expressed that the creditors should have possession of all the property and effects of the assignors "at as early a day as possible," the general words of the grant, and the subsequently declared trust that the assignees should at once, or as soon as practicable, take possession of the property assigned, the idea that such proposed schedule was necessary to the perfection of the instrument, and that nothing was assigned until such schedule should have been made and attached, is without foundation. It is very apparent from a consideration of the whole deed, that this reference to a schedule was not made in contemplation that when annexed it would operate as the only descriptive words of the grant, nor to limit or restrict its general words; but that, as the assignment was by general words, the nature and situation of the property was such as to render one necessary to afford the assignees specific information of the items of property and choses in action thereby assigned, to enable them fully and understandingly to execute their trusts.

The reservation of a power to *perfect* the schedule at some future time, if it should become necessary, strongly

6 Mich.—X.

confirms our construction of the reference to the schedule, and clearly shows that the schedule was not regarded as essential to the immediate operation of the assignment, or as limiting its general language. But it was objected that this reservation renders the assignment void. From what has been already said, it follows that the exercise of this reserved right can have no effect to restrict, in any degree, the assignment, or to limit the general words of conveyance, or to divest the assignees of the property reduced to possession, whether scheduled or not. The evident intention in inserting it was to secure the right to furnish evidence of the particular property embraced within the *general terms* of the assignment, if that should become necessary. The power to perfect the schedule does not imply the power to impair the assignment.

The first three objections to the admissibility of the assignment as evidence were therefore properly overruled. By this construction, we give effect to the instrument consistent with the intention expressed in its preamble, and with the construction put upon it by the parties at the time of its execution, as manifested by the change of the possession of the property before a schedule was made; and when an honest intent can as clearly be inferred from its language as a fraudulent one, we are not at liberty to infer the latter.

It was fourthly objected that the assignment was void as allowing the assignees to sell upon credit. The assumption that they were allowed to sell upon credit is based upon the following language: "And sell and dispose of the same, either at public or private sale, as they, in their good judgment, may deem best, and upon such terms and conditions as they may deem most advisable, and for the best interest of the creditors, converting the same into money," &c. If it be true that the grant of a power to sell upon credit would render the assignment void (which is a question not before us) yet we think a fair and reasonable interpret-

ation of this language will not justify the conclusion that an illegal act was contemplated. This provision is usually found in the forms of assignments consulted by draftsmen; and it is as reasonable to presume that the intent in following such form, and in using the language, was for a lawful as for an unlawful purpose. It was undoubtedly inserted to clothe the assignees with full and entire power over the assets, and to invest them with every discretionary power which they might lawfully exercise. We think, therefore, as no express power to sell upon credit is given by the assignment, so none should be inferred from this general and, to some extent, technical language; and such are now the later and better adjudications. — See cases cited in *Burr. on Ass'ts* (2 *ed.*), 217, 222.

It was lastly objected that the assignment was void as allowing the assignees to delegate their trust without restriction. It is difficult to determine the meaning of this objection. The instrument concludes with the usual clause authorizing substitution, and was evidently intended to clothe the assignees with power to appoint such agents or attorneys as they might find necessary for the collection of debts, or the transaction of any other business matters where an agent might be necessary, and can not, except upon the most violent presumption, be construed into a power to delegate their trusts. We see nothing unusual or objectionable in this provision.

The assignment being valid, the court below properly refused the first five requests of the plaintiffs in error, in charging the jury. The sixth request of the counsel for the plaintiffs in error was also properly refused.

The assignment itself makes no preference of any private and individual debts of the assignees, but such are placed in the fourth and last class.

It is true that there was evidence in the case showing that individual debts were included in the schedule of preferred debts, but how many, or to what amount, does not

appear. Whether the assignors have the right to prefer in-
dividual debts, or not, is a question upon which some di-
versity exists in the courts of the different states, but one
we are not required to determine in the present case, as the
current of authorities, and the better opinion, we think to,
be that such preference does not render the assignment
void.—See *Hollister v. Loud, supra*; *Newman v. Bagley*, 16
*Pick.* 570; *Kirby v. Schoonmaker*, 3 *Barb. Ch.* 46; *Nicholson
v. Leavitt*, 4 *Sandf. S. C.* 252; *Kemp v. Carnley*, 3 *Duer*, 1;
*Burr. on Ass'ts* (2 ed.), 137, 140.

The judgment of the court below is affirmed, with costs.

MANNING and CHRISTIANCY JJ. concurred. CAMPBELL J.
did not sit in the case, having been counsel for one of the
parties.