CRIBBEN and others, Respondents, vs. ELLIS, Garnishee, etc., Appellant.

*September 6 — September 20, 1887.*

ASSIGNMENT FOR BENEFIT OF CREDITORS, *not vitiated by failure to file inventory within twenty days; or to attach schedule referred to;· or by want of affidavit as to value of assets; or by reservation of· exemptions; or by discretion conferred as to sale.*

1. The effect of ch. 251, Laws of 1885, in striking out from sec. 1697, R. S., the provision that a failure to file an inventory of assets, etc., within the ten days therein prescribed should render void a· voluntary assignment for the benefit of creditors, was to change the law in that respect; and such an assignment will not be invalidated by the failure to file such an inventory, etc., within the twenty days now prescribed. The provision of ch. 240, Laws of·

1883, for an examination of the assignor by the circuit court in relation to his property, business affairs, and creditors, furnishes a method of getting at his assets.

2. Sec. 1694, R. S., provides for ascertaining the nominal value of the property assigned by the oath of the assignor and one other witness, and does not require the assignor to make and attach an affidavit of such value to the papers.   Consequently his failure to do so will not invalidate the assignment.

3. A voluntary assignment, the terms of which are so broad and general as to transfer to the assignee all the property of the assignor except his exemptions, is not invalidated by a failure to attach to it a schedule of such property, referred to therein as being annexed.

4. That a voluntary assignment is by its terms made subject to the assignor's exemptions does not vitiate it.

5. Authority given to the assignee, by an assignment for the benefit of creditors, to " sell and dispose of " the property assigned " upon such terms and conditions as in his judgment may seem best, and most for the interest of the parties concerned, and convert the same into money," is to be construed as vesting in such assignee only a legal discretion, and not a power to sell on credit; and it does not render the assignment void.   *Keep v. Sanderson,* 2 Wis. 42; 12 id. 352, overruled.

APPEAL from the Circuit Court for *Oconto* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

The respondents commenced an action upon contract against one W. E. Barlow on the 10th day of July, 1886. On the commencement of such action the respondents made the statutory affidavit, and obtained a garnishee summons against the appellant, and such summons was served upon the appellant on the 10th day of July, 1886.   To this summons the appellant filed his affidavit, as required by the statute, setting forth that on the 8th day of July, 1886, the said W. E. Barlow became and was utterly insolvent; that the claims of his creditors were equally meritorious; and that to prevent the acquirement of any preferences among his creditors, and to secure to them an equal *pro rata* distri-

bution of his assets among them, and in pursuance of the statutes of this state, the said Barlow, on said 8th day of July, 1886, executed and delivered to the appellant a voluntary assignment of all his property, a copy of which assignment was annexed to said affidavit. The answer then alleges that he gave the proper bond, accepted the trusts conferred by said assignment, and on the same day took possession of all the property of said Barlow, for the purposes mentioned in said assignment. He further alleges, in his answer, that he is informed and believes that the plaintiff in said action claims that the assignment is void because it authorizes deponent to sell on credit; that deponent had no intention when said assignment was made, and now has no intention, of selling said property on credit, but intended and still intends to wind up all matters connected with said assignment in the manner and within the time fixed by the statutes of this state. And the appellant, in his said affidavit, submits the question to the court of his liability as garnishee in the action, etc.

Upon this affidavit issue seems to have been taken, and the case was tried by the court. On the trial the assignment was given in evidence; the bond of the assignee, and his indorsement on the assignment accepting the trust; the indorsement of the county judge on the assignment, as required by the statute; the justification of the sureties on the bond, and their approval by the county judge. A list of the creditors was filed December 27, 1886. An inventory of the property assigned was made and filed July 28, 1886. The respondents gave in evidence the judgment and all the records in the action of the respondents against the said W. E. Barlow, which judgment was by default, and in due form, for the recovery of $1,295.50 damages, and $30.53 costs. The appellant also produced A. Reinhart as a witness, who testified that at the time of executing said assignment and bond he was the county judge of Oconto county,

who certified and approved the same, and that he drew the same; that before the execution of said bond the nominal value of the assets of said assignor was ascertained by him, by the oath of said assignor and one Frank Stone, at the sum said bond was executed for, to wit, $10,000; that the parties requested him to draw an assignment; that he had never drawn one before; that he examined the statute, and took the form from a form-book, supposing it to be sufficient. The evidence of Reinhart was objected to by the respondents. Objection was overruled, and exception taken.

The court finds all the facts set up in the appellant's affidavit, and as established by his proofs at the hearing, and the fact that the respondents obtained judgment against Barlow as stated. The learned judge, by his eleventh finding of fact, found "that the said assignment was made and executed by said W. E. Barlow with intent to hinder and delay his creditors." And, by his twelfth finding, "that the garnishee herein took possession of said property in good faith, and made a full and fair statement of the facts, as he understood them, in his answer." He also finds, as conclusion of law, "that all the property in the hands of the garnishee, of which he obtained possesssion under and by virtue of such asssignment, is the property of the defendant Barlow." To the several findings of fact and conclusions of law the appellant duly excepted. Judgment was rendered against the appellant, subjecting the property in his hands held under said assignment to the payment of the judgment of the respondents against said Barlow. From this judgment he appeals to this court.

For the appellant there was a brief by *Ellis, Greene & Merrill*, and oral argument by *G. G. Greene*. Among other things, they argued that, under our present statute, which protects the rights of creditors, an assignment for the benefit of creditors is to receive a liberal construction. Where it gives a discretion it is to be construed as giving only a

Cribben and others vs. Ellis, Garnishee, etc.

discretion to do acts which are legal. *Bound v. Wis.* *Cent. R. Co.* 45 Wis. 562; *Rogan v. Watertown,* 30 id. 259; *Merrill v. Melchior,* 30 Miss. 516; *Crittenden v. French,* 21 Ill. 598; 2 Parsons on Contr. 505; Coke Litt. 42, 183; *Shore v. Wilson,* 9 Clark & F. 397; *Kellogg v. Slauson,* 11 N. Y. 302; *Batten v. Smith,* 62 Wis. 97.

For the respondents there was a brief by *Eastman, Scudder & Mountain,* and oral argument by *Mr. Eastman.* They took the ground that the assignment authorized the assignee to sell upon credit, and under the uniform decisions of this court it was void, citing *Hutchinson v. Lord,* 1 Wis. 286; *Keep v. Sanderson,* 2 id. 42; 12 id. 352; *Lord v. Devendorf,* 54 id. 491; *Vernon v. Upson,* 60 id. 418; Diss. opinion of Judge Ryan in *Bound v. Wis. Cent. R. Co.* 45 id. 566. These decisions are sustained by decisions under similar statutes in other states. *Truitt v. Caldwell,* 3 Minn. 364; *Billings v. Billings,* 2 Cal. 107; *Sutton v. Hanford,* 11 Mich. 513; *Nicholson v. Leavitt,* 6 N. Y. 510; *Mussey v. Noyes,* 26 Vt. 462; *Page v. Olcott,* 28 id. 465; *Woodburn v. Mosher,* 9 Barb. 255; *Murphy v. Bell,* 8 How. Pr. 468; *Brigham v. Tillinghast,* 13 N. Y. 215; *McConnell v. Sherwood,* 84 N. Y. 531; *Jessup v. Hulse,* 21 id. 168. The rule of law is not changed by the changes in the statute. *Gardner v. Com. Nat. Bank,* 95 Ill. 298. The assignee derives all his authority from the assignment. *In re Lewis,* 81 N. Y. 421. The reservation of exempt property in general terms renders the assignment void for uncertainty. *Goll v. Hubbell,* 61 Wis. 293; *Fowler v. Hunt,* 48 id. 345; *Zeilke v. Morgan,* 50 id. 560–5. It is also void for a failure to annex to it a proper schedule of assets, and an affidavit of their value. *Watson v. Hoel,* 1 N. J. 137; *Lloyd v. Wyckoff,* 11 id. 218, 224, 229; *Todd v. Hoagland,* 36 id. 353, 355.

TAYLOR, J. It does not appear from the record upon what particular ground, or upon what evidence, the learned cir-

cuit judge found as a fact that Barlow made such assignment with the intent to hinder and delay his creditors; but as he at the same time found that the assignee was not guilty of any such intent in accepting the assignment, and taking possession of the property, we are led to the conclusion that the learned judge must have found such intent upon the face of the assignment itself. This conclusion is made certain by the argument made in this court by the learned counsel for the respondents in support of the findings of the learned circuit judge. In his brief he claims that the finding of the judge is correct, for the following reasons: *First.* That the assignment on its face authorizes the assignee to sell the assigned property upon credit. *Second.* The schedule referred to in the assignment was never made. *Third.* There was no affidavit of the nominal value of the property assigned. *Fourth.* The assignor excepted from the operation of the assignment his exempt property, without specifying what said property was. *Fifth.* There was no inventory of assets. There is no pretense that there was any evidence in the case showing an intent to hinder and delay creditors, except such as can be found on the face of the assignment papers. We will consider the objections made to the assignment in the inverse order of their statement above.

1. The objection that there was no inventory of the assets filed does not vitiate the assignment. Sec. 1697, R. S., which provided that such an inventory should be made and filed within ten days after the assignment was made, and that a failure to make and file the same should render the assignment void, has been modified by ch. 240, Laws 1883, and ch. 251, Laws 1885. Ch. 240, Laws 1883, provides for an examination of the assignor by the circuit court in relation to his property, business affairs, and creditors; and this furnishes a method of getting at his assets. And ch. 251, Laws of 1885, strikes out of said sec. 1697 the words, "and a failure to make and file such inventory and list shall render

such assignment void." And the section now reads, as amended: "Within twenty days after the execution of the assignment, the assignor shall also make, and file in the office of said clerk, a correct inventory of his assets, and a list of his creditors, stating the place of the residence of each of such creditors, and the amount due to each; which inventory and list shall each be verified by his oath, and have affixed the certificate of the assignor that the same is correct according to his best knowledge and belief; but no mistake shall invalidate such assignment, or affect the right of any creditor." It seems to us very clear that by this amendment the legislature intended to change the law, and that thereafter the failure or neglect to make and file the inventory and list of creditors, within the term prescribed, should not avoid the assignment. Having repealed that part of the section which declared that such failure or neglect should avoid the assignment, it would be clearly against the intent of the legislature to hold that such failure should still work an avoidance of it. There is, perhaps another reason why the neglect of the assignor to make such list or inventory would not affect the right of the appellant in this case. It will be seen that when the garnishee summons was served in this case,— viz., the second day after the assignment was made,— if the assignment was good in other respects, the title to the property was vested in the appellant, and he would not be liable upon the garnishee process until his right to the property was divested by the subsequent neglect to make and file the list and inventory. See *Farwell v. Gundry*, 52 Wis. 271.

2. It is said that, because the assignment is made subject to the assignor's exemptions, it is void. This objection to the assignment does not vitiate it. It was so held by this court in *Bates v. Simmons*, 62 Wis. 69, 76; *First Nat. Bank of Madison v. Hackett*, 61 Wis. 335, 347, 348. Upon this point, see, also, the following cases, cited in the brief of the

learned counsel for the appellant: *Hildebrand v. Bowman,* 100 Pa. St. 580; *Richardson v. Marqueze,* 59 Miss. 80; *Hartzler v. Tootle,* 85 Mo. 23; *Perry v. Vezina,* 63 Iowa, 25; *Rainwater v. Stevens,* 15 Mo. App. 544; *Brooks v. Nichols,* 17 Mich. 38; *Rosenthal v. Scott,* 41 Mich. 632; *Knefler v. Shreve,* 78 Ky. 297, 308; *Baldwin v. Peet,* 22 Tex. 709, 718; *Garnor v. Frederick,* 18 Ind. 507; Wait, Fraud. Conv. sec. 326, p. 428. ·

3. It is urged that the assignment is void because no affidavit of the nominal value of the property assigned is attached to or filed with the papers. This objection is answered by the statute itself. It does not require any affidavit of such value to be made. It is to be ascertained by the oath of the assignor and of one other witness. It was so ascertained in this case. See *Ball v. Bowe,* 49 Wis. 495; *Burns v. Doyle,* 28 Wis. 460.

4. The assignment in its granting clause reads as follows: " The assignor grants, bargains, sells, releases, transfers, and sets over to the party of the second part . . . all and singular all the goods, chattels, merchandise, hardware, etc., now in the store of the first party in the city of Oconto, Wisconsin, together with all bills, notes, book-accounts, claims, demands, choses in action; judgments, evidences of debt, and property of every kind and every name and nature whatsoever, of the party of the first part, except his exemptions, and more particularly described in the schedule hereunto annexed, marked 'Schedule A.'" No Schedule A was ever made or attached to the assignment. It is claimed by the counsel for the respondents that the neglect to attach such schedule renders the assignment void. We think the general language of the assignment transferred to the assignee all the property of the assignor, independent of any schedule; and, had there been a Schedule A annexed to the assignment, the omission of any part of the property of the assignor in such schedule would not have limited the gen-

eral words of the assignment, or confined the assignment
to the property mentioned in such schedule.  The assign-
ment is not an assignment of the property mentioned in the
schedule, but is an assignment of all the assignor's property,
and, for a more particular description of it, refers to a
schedule attached.  In such cases the courts uniformly hold
that the schedule, if attached, does not restrict or limit the
general words of the assignment, and that all the property
of the assignor passes, though not mentioned in the schedule.
See cases cited in appellant's brief.  *Platt v. Lott*, 17 N. Y.
481; *Turner v. Jaycox*, 40 N. Y. 470; *Holmes v. Hubbard*,
60 N. Y. 185; *E. I. Sav. Bank v. Roche*, 93 N. Y. 377,
379; *Coots v. Chamberlain*, 39 Mich. 565.  If the schedule
would not have limited the assignment, its omission cannot
destroy it.

The remark made by Justice LYON in the opinion in the
case of *Smith v. Bowen*, 61 Wis. 261, is quite as applicable
to the case at bar as to the case there under consideration.
The following words in the present assignment, " and more
particularly described in the schedule hereunto annexed,
marked ' Schedule A.,' " " were manifestly inadvertently
inserted by following too closely the old forms, and may be
rejected as surplusage.  They can prejudice or mislead no
one."  It is very clear that the omission to annex a Schedule
A to the assignment does not render it void.

5. The other objection to the assignment, and the one
which is mainly relied upon by the learned counsel for the
respondents to uphold the decision of the court below, is
that the assignment upon its face authorizes the assignee to
sell the assets upon credit, and is therefore void, as necessa-
rily tending to hinder and delay the creditors in the collec-
tion of their debts.  For the purpose of this case it may be
admitted that, even under the present state of the law in
regard to assignments in this state, an assignment which
expressly gave the assignee power to sell on credit would

be held void in law, as tending to hinder and delay the creditors of the assignor. Under the construction we feel compelled to give the language used in this assignment, the question above suggested does not arise.

It is strongly urged, on the part of the learned counsel for the respondents, that the construction he claims for the language used in this assignment, has at least been twice adjudicated to *give* the assignee power to sell the property assigned to him on credit, and is therefore void in law. In fact, such was the determination in this court in the case of *Keep v. Sanderson,* 2 Wis. 42, and 12 Wis. 352. These cases involved the same assignment, and the language used in the assignment in these cases was identical with the language used in the assignment in the case at bar.

The only question to be determined on this objection to the assignment is whether the decision in *Keep v. Sanderson* should, under the rule of *stare decisis,* be applied to this case. Whether the decision in the case of *Keep v. Sanderson* should be held to conclude this court under the rule must depend, in the first place, upon the question whether the construction given to the language used was, at the time it was made, that usually and generally given to it by courts, or whether such construction was a disputed one; and, secondly, whether the circumstances under which the court fixed a construction upon that language have so changed, by reason of the changes in the laws of the state upon the subject of assignments, as to render such construction prejudicial to the public interest, instead of beneficial, and for that reason should be changed. In determining the question whether this court should adhere to the case of *Keep v. Sanderson,* it must be understood that there is no pretense, even in that case, that the language used gives the assignee, in express terms, the power to sell on credit; and the decision is placed upon the ground that the following words in the assignment giving the power of sale, viz.: " The as-

signee shall take possession of all and singular the property hereby assigned, and sell and dispose of the same upon such terms and conditions as in his judgment may seem best, and most for the interests of the parties concerned, and convert the same into money,"— may be fairly construed to give the assignee the right to sell upon credit.

The first decision in *Keep v. Sanderson* was made in 1853; the second, in 1860. So far as can be ascertained from the report of the decision in 1853, the point upon which the court determined the case was not fully discussed by the counsel for the plaintiff in error, and the only cases cited by Justice CRAWFORD, in his opinion, to sustain the construction given to the language of the assignment by the court, were *Hutchinson v. Lord*, 1 Wis. 286; *Le Roy v. Beard*, 8 How. 451. In *Hutchinson v. Lord* the language was different from that in *Keep v. Sanderson*, and the case of *Le Roy v. Beard* arose upon the construction of a power of attorney to sell lands, in which the language was entirely different from the language used in *Keep v. Sanderson*. Upon the second hearing of the case, in 12 Wis. 391, the correctness of the first decision was questioned on the authority of *Norton v. Kearney*, 10 Wis. 443, as was claimed by the attorney for the defendant in error in his brief, and probably on the authority of the cases of *Kellogg v. Slauson*, 11 N. Y. 302, and *Nye v. Van Husan*, 6 Mich. 329. Both of these cases had been decided after the first decision in the case of *Keep v. Sanderson*, and before the second decision. Both the cases above cited are cited by the chief justice in *Norton v. Kearney*, apparently with approval, and we think it was well said by the learned attorneys for the defendant in error, on the second hearing of *Keep v. Sanderson*, that the correctness of the first decision in that case had been questioned by the case of *Norton v. Kearney*. The Hon. Matthew H. Carpenter, the learned attorney for the plaintiff in error, on the second hearing of *Keep v. San-*

*derson*, hardly questioned the assertion of the attorneys for the respondent that the correctness of the first decision had been seriously questioned by the subsequest decision of this court, as well as of the courts of Michigan and New York. And in his brief he says, after referring to *Norton v. Kearney:* "If, in that case this court had thrown doubt upon the correctness of the principle decided in *Keep v. Sanderson*, then the maxim of *stare decisis* may no longer avail us. This is merely a maxim of judicial economy, and when the court is clearly satisfied that a case was erroneously decided, they will not follow it and perpetuate the same error in other cases between different parties." He then goes on to argue at length that a decision in the same case between the same parties is *res adjudicata*, and conclusive in that case, and upon that ground he insisted that the decision in the first case between them must be adhered to in this second ·case.   By looking at the opinion in 12 Wis., it will be seen that, while the learned justice who delivered the opinion mildly protests that the principle of the decision in 2 Wis. was not questioned in *Norton v. Kearney*, he is very careful to say: "We shall therefore adhere, without hesitation, to the decision already made by this court, *between these parties upon this assignment*, holding it void."

We think we may fairly infer that, in view of the decision in *Norton v. Kearney*, *supra*, and *Bound v. Wis. Cent. R. Co.* 45 Wis. 543,— in both of which cases the rule for the construction of contracts granting powers, adopted by this court, would have upheld the assignment in the case of *Keep v. Sanderson*, had the decisions in *Kellogg v. Slauson* and *Nye v. Van Husan*, *supra*, been made before the first decision in *Keep v. Sanderson*, the decision in that case would not have been made as it was made.   In *Norton v. Kearney*, the contract provided that the assignee "should dispose of said goods, wares and merchandise to the best

advantage, in his discretion." This language is more unrestricted than the language in this case, or in *Keep v. Sanderson*, but this court held that this language did not confer a power to sell on credit. The principle for the construction of the contract is the one adopted by the New York and Michigan courts in the cases above cited, viz.: "That, where a contract confers upon a person a discretionary power, such power must be exercised within legal limits, and the law will not imply an unlawful discretion not given by express words, and will not defeat the instrument by inferring that the assignor contemplated an unlawful act, but that legal intendments are always in favor of its validity." This rule was clearly adopted by this court in *Bound v. Wis. Cent. R. Co.*, *supra*. In that case the legislature had given certain towns the power to aid railroads. The terms of the grants were of such a general nature that they might include an unlawful aid, under the decisions of this court. The majority of this court held that, "in construing the power, it should be held that the legislature did not intend to grant a power or authority to do an unlawful act, but that the general words used must be construed to grant only a lawful power, and one to be exercised within legal limits under the constitution." This construction of the power granted by the legislature was repudiated by the late learned Chief Justice RYAN, and his dissent from the decision of the court was mainly based upon the authority of *Hutchinson v. Lord* and *Keep v. Sanderson;* and he insisted that the rule of construction in these cases had not been departed from by this court, notwithstanding the decisions in other courts, and the decision in *Norton v. Kearney;* and he further insisted that the decision of the majority of the court was a departure from the rule laid down in *Keep v. Sanderson*, and in this contention we think the learned chief justice was right, and that the decision in *Norton v. Kearney* and *Bound v. Wis. Cent. R. Co.* was a departure in princi-

ple from the rule laid down in *Keep v. Sanderson*, if not a direct overruling of the decisions in these cases.

We are not inclined to follow the rule of construction adopted in *Keep v. Sanderson*, but to follow the rule laid down in *Norton v. Kearney* and *Bound v. Wis. Cent. R. Co.*, in this court, and in *Kellogg v. Slauson* and *Nye v. Van Husan*, in the courts of New York and Michigan. It does not seem to us that, under the present state of the law in this state in regard to voluntary assignments, a different rule of construction should be adopted in construing an assignment from that adopted in the construction of other contracts and grants of powers. We are disposed to adopt the rule as stated by this court in *Norton v. Kearney*, and which is clearly expressed in the opinion in that case in the following language: "It is contended that the words 'in my discretion' are as broad and comprehensive as the words 'upon such terms and conditions,' and necessarily imply an authority to sell upon credit. We are of the opinion that the discretion here vested must be understood as a legal discretion; that is, a discretion to be exercised within the limits which the law fixes in such cases. There is ample room for the exercise of this discretion, without transcending any rule of law. It must be held to apply to the mode of sale,— as to whether it shall be public or private, by the quantity or single article,— and the various other details of such transactions. By this construction the instrument is sustained and its language satisfied." This rule was adhered to in *Bound v. Wis. Cent. R. Co.*, *supra*, notwithstanding the very able argument of the late learned chief justice to sustain the rule adopted in *Keep v. Sanderson*, in opposition thereto.

We have less hesitancy in expressly overruling the decisions in *Keep v. Sanderson* for the reason that the laws of the state upon the subject of voluntary assignments have been since so changed that it would now be against pub-

lic policy to follow these decisions. At the time *Keep v. Sanderson* was decided there was no statute law upon the subject of voluntary assignments, and it had perhaps become a matter of public notoriety that such assignments were generally made, not for the purpose of securing the application of the assets of the debtor to the payment of his creditors, but rather to secure them for the assignor's benefit, or as a coercive means of obtaining a compromise with the creditors. Courts at that time looked with great jealousy upon such assignments, especially when any preferences were made therein, and were ready to so interpret the language of the assignment as to defeat rather than uphold it. At that time the assignee gave no surety for the faithful discharge of his duties. He represented the assignor only, and was accountable only to him. Now, the statute prescribes that the assignee shall give ample security for the faithful discharge of his duties, and he becomes responsible to the creditors for any failure to perform such duties. All preferences of creditors are prohibited, and the law requires a speedy and effectual conversion of the assets of the debtor into money, for the payment of his creditors in equal proportions. The whole business is under the control of the courts, and the rights of the creditors are amply protected against any wrong-doings of the assignee. The law also makes him take the place of the creditors in reclaiming for their use any property of the assignor which he may have transferred, before making an assignment, for the purpose of defrauding or hindering his creditors.

Under the present law, an assignment by an insolvent debtor for the benefit of his creditors is the most just and equitable disposition that he can make of his property, and the law should and does approve of such assignments; and it will not avoid them by any strained construction of the language used by the assignor, and construe such language so as to make the assignor intend to do that which he is

bound to know would wholly defeat the object of his assignment.

In the opinion in the case of *Batten v. Smith*, 62 Wis. 97, Justice CASSODAY says: "While the law authorized a failing debtor to prefer some of his creditors at the expense of others, either by way of sale, special transfer, or a general assignment for the benefit of creditors, and left the assignee as the mere representative of the debtor, without giving him the right to acquire such property as the debtor had fraudulently conveyed or transferred prior to the assignment, . . . there was much more reason for holding a stringent rule of construction than there is since the recent amendments." To enforce the principle of construction adopted in the cases of *Keep v. Sanderson* would tend to defeat the object of the present law of assignments, which seeks to enforce an equal distribution of the assets of the insolvent, rather than to uphold it, and to accomplish by indirection that which the law seeks to prevent.

We think the circuit court erred in holding the assignment void, and finding that it was made by the assignor for the purpose of hindering and delaying his creditors.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to the circuit court to enter judgment in favor of the garnishee.

See note to this case in 34 N. W. Rep. 154.— REP.