THE EMIGRANT INDUSTRIAL SAVINGS BANK v. CATHARINE ROCHE et al

THE NATIONAL BANK OF RONDOUT, Claimant, Respondent; THOMAS KENNEALLY, Claimant, Appellant.

At the time of the execution of an assignment by H. for the benefit of his creditors, which, by its terms, purported to convey all of the assignor's property, he was the owner of a judgment. In the inventory of property subsequently made and filed the judgment was not included. The N. Bank of R. became the owner of all the claims against the assignor which were entitled to share in the assigned estate. These largely exceeded in amount the value of all the assigned property. Subsequently, upon application of the assignor for a settlement of his accounts and his discharge, a decree was entered, with the consent of said

bank, approving the accounts and directing the assignee to convey to the assignor all of the real estate assigned " mentioned in the inventory and schedules remaining unsold," and to convey to said bank " all the rest and residue of said assigned estate, including * * * judgments and all other personal property of every kind and nature," which were assigned " and particularly mentioned in the inventory and schedules, * * * excepting such property as is by law exempt." The assignee, in pursuance of the decree, executed to the bank an assignment of certain personal property specified, and of " all claims, * * * judgments and evidences of debt" against certain persons mentioned, and against "any other person or persons not named above" which were assigned to him. At the time of this transfer neither the bank nor its assignor knew of the judgment. H. thereafter executed an assignment of the judgment to K. A surplus having arisen on foreclosure, to which the owner of the judgment was entitled, *held*, that the judgment passed by the assignment of H. to his assignee, and by the decree and the assignment to the bank, it became the owner thereof, and so was entitled to the surplus.

The rule that general words in an assignment are restricted by a subsequent clause referring to a schedule annexed is subordinate to the rule requiring all instruments to be so construed as to give effect to the intention of the parties.

(Argued June 28, 1883 ; decided October 2, 1883.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, made January 10, 1883, which affirmed an order of Special Term overruling exceptions to, and confirming the report of a referee as to the disposition of surplus money arising on foreclosure sale herein.

The material facts are stated in the opinion

*Henry Arden* for appellant. The arrangement made between Hallahan's assignee and the respondent, his only remaining creditor, for the purpose of putting an end to the trust and relieving the assignee and his sureties from further responsibility, was a mere private agreement, and must be viewed and construed as such. (*In re Lewis*, 81 N. Y. 424.) General words in an assignment are controlled by those more particular and specific, thereby giving effect to all parts of the instrument, unless an intention appears to the contrary. (*Coddington* v. *Davis*, 1 N. Y. 186; *Parshall* v. *Eggert*, 54 id. 23; *Auburn B'k* v. *Leonard*, 40 Barb. 134; *Knight* v.

*Cole,* Eq. Cas Abr. 170 ; *Van Hagen* v. *Van Rensselaer*, 18 Johns. 123 ; *Munro* v. *Alaire*, 2 Caines, 327 ; *Wilkes* v. *Ferris*, 5 Johns. 344 ; *Holmes* v. *Hubbard*, 60 N. Y. 183.) The intention of the parties is to be gathered from their situation at the time when the agreement was made. (*Holmes* v. *Hubbard*, 60 N. Y. 183.) Where the trust was ended, the title of Hallahan to the property undisposed of became absolute and perfect in him, by operation of law, and his assignment of the judgment to the appellant vested the legal title to it in the latter. ( *Wintringham* v. *Lafoy*, 7 Cow. 735 ; Bishop on Insolvent Debtors, 381 ; *Bruner* v. *Meigs*, 64 N. Y. 506 ; R. S., part 2, chap. 1, tit. 2.) If it be held that the assignment to the bank carried the judgment in question, contrary to the intention of the parties, it was an accident and mistake, and this court will in this proceeding reform the assignment to conform to the intention of the parties, and correct the mistake. (*Bergen* v. *Carman*, 79 N. Y. 151; *Meyer* v. *Lathrop*, 173 id. 322.) Parol evidence to show that a writing does not express the contract as agreed on is always competent. (*Hoag* v. *Owen*, 57 N. Y. 644 ; *Dempsey* v. *Kipp*, 61 id. 471.)

*Howard Chipp, Jr.*, for respondent. An assignor must strip himself of all his property for the benefit of his creditors, else the statute could give him no benefit. The fact that any of his property was omitted from his schedules would not alter the effect of his assignment. (*Platt* v. *Lott*, 17 N. Y. 478 ; *Holmes* v. *Hubbard*, 60 id. 185 ; *Turner* v. *Jaycox*, 40 id. 473.)

EARL, J. The plaintiff foreclosed a mortgage against Michael Roche, and there was a surplus after satisfying the mortgage. There was a judgment which was a junior incumbrance upon the mortgaged premises, and it is conceded that the owner of that judgment is entitled to the surplus money ; and the appellant Kenneally, and the respondent The National Bank of Rondout, each claims to be the owner of the judgment. It has so far been decided that the respondent owns the judgment, and whether there is sufficient evidence to uphold that decision, is the sole question for our determination.

The judgment was recovered by The Kingston National Bank against Roche, Hollahan, and two Thorps, upon a note made by the Thorps, payable to the order of Roche and indorsed by him, and subsequently by Hollahan, who paid the judgment and took an assignment thereof. Subsequently, while holding the assignment and owning the judgment, he became insolvent and made a general assignment for the benefit of his creditors. The instrument of assignment, dated August 14, 1878, in terms conveyed all his property, real and personal, to the assignee for the purposes of the trust. An inventory of his property was subsequently made and filed in which the judgment was not inserted, and there is no evidence that the judgment ever came to the knowledge of the assignee. But it is undisputed that it nevertheless passed to him. (*Platt* v. *Lott*, 17 N. Y. 478; *Turner* v. *Jaycox*, 40 id. 473; *Holmes* v. *Hubbard*, 60 id. 185.)

The respondent purchased and became the owner of all the claims against the assignee which were entitled to share in the assigned estate, and then the assignee applied to the County Court of Ulster county for a settlement of his accounts and for his discharge. Citations for such settlement were issued out of the County Court and were published and served as required by law. Upon the return of the citations, the assignee presented his accounts and a decree was made, with the consent of the respondent, approving the accounts. The decree also provided that the assignee should convey to Hollahan all the real estate assigned to the assignee "and mentioned in the inventory and schedules and remaining unsold," and "that all the rest and residue of said assigned estate, including cash, mortgages, judgments, and all other personal property of every kind and nature whatsoever, including book accounts, debts due, etc., assigned to James J. Treanor, as assignee, and particularly mentioned and set forth in the inventory and schedules heretofore, and on the 13th day of September, 1878, filed in the office of the county clerk of Ulster county, excepting only such property as is by law exempted, shall be turned over and assigned forthwith to the National Bank of Rondout, and that

thereupon the said assignee shall be relieved from all liability thereupon. "

In pursuance of this decree, on the 11th day of December, 1879, the assignee assigned to the respondent certain articles of personal property particularly mentioned, and all claims, notes, book-accounts, judgments, or other evidences of debt which existed in favor of the assignor or assignee against certain persons particularly named; and against " any other person or persons not named above. " At the time the decree was entered and at the time of the execution of the last assignment, the respondent had no knowledge of the judgment in question. It nevertheless claims the judgment by virtue of that assignment. On the 15th day of December, 1880, Hollahan assigned the judgment to the appellant, and he bases his ownership of the judgment upon such assignment. He argues that the judgment did not pass to the respondent by the decree and the assignment executed in pursuance thereof, because it was not contained in the inventory, and that, therefore, it remained property in the hands of the assignee undisposed of, and that as the trust was fully closed and discharged, it reverted to Hollahan who could legally dispose thereof.

We are of opinion that the judgment passed to the respondent. It is a rule for the construction of all written instruments conveying property, that if a general clause be followed by special words the instrument shall be construed according to the special matter; and in the application of this rule it is held that the general words of an assignment should be restricted by a subsequent clause referring to a schedule annexed for a more full description. (*Wilkes* v. *Ferris*, 5 Johns. 335; *Holmes* v. *Hubbard*, 60 N. Y. 183.) But this rule is subordinate to the paramount and more general rule which requires that all instruments shall be so construed as to give effect to the intention of the parties.

Here Hollahan had assigned all his property to his assignee, except such as was by law exempt from execution, in trust for his creditors, and they had the right to have all such property applied for the purposes of the trust. In the inventory and

schedules made by the insolvent, his liabilities were put down at $52,252.25, the nominal value of his assets at $150,244.79, and the actual value at $38,552.82. The real value of the assets was much less than the last sum and wholly insufficient to pay the liabilities. The real estate was of no value, over and above the incumbrances thereon, and for that reason, with the consent of the respondent, it was ordered to be reconveyed to the assignor. Out of the property ordered by the decree to be assigned to the respondent, it had as late as December, 1881, failed to make the amount of its claims against the assignor, it having realized only about one-quarter thereof.

In the light of all these circumstances, what was meant by the language used in the decree and the assignment executed in pursuance thereof? The language of the decree is very broad and general and was clearly intended to embrace in the assignment ordered all the property assigned to the assignee. The very nature of the case shows that no part of the property was intended to be left in the hands of the assignee because it was a final settlement of his accounts and he was formally discharged. It is true that the inventory and schedules are referred to; but yet the assignment ordered was intended to include all the property, as property exempt from execution was particularly excepted, thus showing that it was intended that all other property was to pass and the assignor was to have none of the property except the real estate which was ordered to be reconveyed to him. The assignment executed by the assignee shows how the parties understood the decree. In that the inventory and schedules are not referred to. The language is general, and purposely made so, as after a particular description of certain assets there is a further assignment of all claims, notes, book-accounts, judgments and other evidence of debt, " against any other person or persons not named." It is not denied that the language used in the assignment is sufficient to include this judgment.

Even if the assignment is broader than the decree it was nevertheless valid, and operates upon the judgment. As the respondent was the sole creditor for an amount largely exceed-

ing the value of all the assets assigned, the assignment of the judgment could have been made without any order of the court, and would not have been absolutely void. It would have been good against Hollahan, and his assignee, and the most that could have been said against it would be that the respondent might be called upon to account for the proceeds of the judgment, if for any reason it was not entitled to all of them. No court of equity would set it aside upon any facts now appearing.

It matters not that the assignee testified that he did not intend to assign the judgment; his evidence can mean no more than that he did not know of the judgment, and hence had no intention about it. But the effect of his assignment cannot be affected by such evidence. Nor does it matter that the respondent did not, at the time, know of the judgment. It was to have all the assets, and the language of the decree, and of the assignment, was purposely made broad and general, so as to include all of them. It is honestly entitled to this judgment, and it would be a gross fraud upon it to deprive it thereof. It was the purpose to devote all of Hollahan's property to the payment of his debts, and while they remain unpaid, the trust has not been discharged, so long as any of the assigned property remains unapplied. The equity rule, that property remaining in the hands of the trustee after the purposes of the trust have been fully accomplished, shall revert to the creator of the trust, cannot apply to a case like this.

We have gone far enough at least to show that there was evidence sufficient to uphold the decision appealed from, and the order should, therefore, be affirmed, with costs.

All concur, except Ruger, Ch. J., dissenting, Andrews, J., absent, and Rapallo, J., not voting.

Order affirmed.