## CISSELL *v.* JOHNSTON.

ASSIGNMENTS FOR BENEFIT OF CREDITORS; CONSTRUCTION; FRAUD; AFFIDAVITS TO SUPPORT ATTACHMENTS.

1. All parts of a deed of assignment for the benefit of creditors, will be considered, if possible, in arriving at the general intention of the instrument, and if consistent with the language two constructions can be given, that is to be adopted which will render it legal and operative rather than illegal and void.

2. Where such a deed is made by a partnership, contemporaneous deeds of two of the copartners conveying their individual real estate to the assignee in aid of the assignment, will be read in connection with the assignment, to determine whether all of the assignors' property has been assigned.

3. A provision in an assignment for the benefit of creditors limiting the benefit of the trust to such creditors only as shall release their demands if not paid in full, is a preference within the meaning of the act of Congress of February 23, 1893 (27 Stat., 474), and is therefore void; and the assigned property is distributable *pro rata* among all the creditors.

4. A reservation of the surplus for the benefit of the assignors in such an assignment will not render the assignment void, where the assigned property must be distributed among all of the creditors without preference.

5. Either fraud in fact or fraud in law will render an assignment void as against the creditors of the assignor.

6. The right given a creditor of an assignor, by the 3d section of the assignment act of February 23, 1893, to attack the assignment in an equity proceeding without first reducing his claim to judgment, is not an exclusive remedy, but is cumulative.

7. It is sufficient in an affidavit to support an attachment, to follow the words of the statute (Sec. 782, R. S. D. C.) substantially, without stating the facts upon which the conclusion of the affiant is reached. If the grounds of the affiant's conclusion are stated, such statement does not affect the affidavit.

8. Where an attachment is based upon the supposed illegality of an assignment upon its face, an affidavit of the attorney for the attaching creditor referring to the assignment and stating that in his opinion it is fraudulent and void, is sufficient to support the attachment within the meaning of Sec. 782, R. S. D. C.

No. 331. Submitted October 15, 1894. Decided November 6, 1894.

HEARING on an appeal by the plaintiffs from an order

quashing a writ of attachment sued out in an action of *assumpsit*. *Affirmed*.

The COURT in its opinion stated the case as follows:

This is an appeal from an order quashing the attachment sued out by appellants, George W. Cissell and S. Sewell Cissell, as plaintiffs below in an action of *assumpsit* against Johnston Bros. & Co. The attachment was issued at the same time that the suit was begun, March 21, 1894, and is based on the ground that " The defendants have assigned, disposed of and secreted their property with intent to hinder, delay and defraud their creditors."

The charge of fraudulent assignment is based on the following instrument, the construction of which is involved:

" This indenture, made this 16th day of March, A. D. 1894, by and between Willis Johnston, Harry B. Johnston, William J. Johnston, and Walter D. Johnston; trading as Johnston Bros. & Co.; parties of the first part; and Edwin B. Hay, of the city of Washington, District of Columbia; party of the second part.

" Witnesseth: That the said Willis Johnston, Harry B. Johnston, William J. Johnston, and Walter D. Johnston, trading as Johnston Bros. & Co., are in debt to divers persons, and unable to pay the several amounts of their claims, in full, desire to convey all their property for the benefit of their creditors, without preference or priority. Therefore, in consideration of the premises, the said parties of the first part, by these presents, grant, bargain, sell, assign, transfer, and set over unto the said Edwin B. Hay, all their lots, tenements, hereditaments, goods, chattels, rights, credits and effects of every name, nature and description, consisting of wares, merchandise, stock in trade, accounts, and bills receivable, in their business houses No. 729 7 St. No. 639 La. Ave. and part of No. 641 La. Ave. N. W. in the city of Washington, District of Columbia; together with all the fixtures and 16 horses and 20 wagons at the stable of

T. M. Draney, 643, 645, N. Y. Ave. N. W., saving only such property as is by law exempt from attachment and execution. In trust, nevertheless, to sell or dispose of the same, at public or private sale, at said assignee's discretion, as may be best for the creditors hereinafter named, and with full power to compound, adjust or settle for the same, or *in* any part thereof, and apply the proceeds thereof as follows: To pay all costs and charges of these presents, and the lawful expenses of executing the trust hereby created, to distribute the remainder of said proceeds, ratably, and in equal proportions, to the creditors of the said Johnston Bros. & Co., in satisfaction and release of all debts owing by the said parties of the first part. To repay to the said parties of the first part, their executors, administrators or assigns, the residue of the said proceeds should there be any. The estimated indebtedness of the concern is about forty thousand ($40,000.00) dollars, while the estimated value of the assets is forty thousand ($40,000.00) dollars. A list of creditors is appended and made part hereof. In witness whereof, the said parties of the first part, have set their hands and seals, this 16th day of March, A. D. 1894.

" WILLIS JOHNSTON.
" HARRY B. JOHNSTON.
" WILLIAM J. JOHNSTON.
" WALTER D. JOHNSTON." .

The only schedule attached was one of " Notes and Acceptances." Having been signed by each partner separately, the same was properly acknowledged by each one for record. An affidavit is also attached in the name of each, to the effect "that the above deed of assignment by them subscribed includes the assets and liabilities of the firm of Johnston Bros. & Co., of every nature and kind." The assignment was recorded on the same day.

The charge of fraud is based wholly in the provisions of this assignment, which it is alleged are illegal and fraudulent *per se.*

4 Ct. App.—22

The motion to quash was accompanied by affidavits, which need not be recited, and the following deeds: 1. Deed by Harry B. Johnston and wife, dated March 16, 1894, conveying to the assignee, E. B. Hay, a certain lot in the city of Washington, in trust to be sold and proceeds applied to the creditors of said parties "trading as Johnston Bros. & Co., *pro rata*, and in proportion to their respective claims." 2. Deed by William J. Johnston and wife, dated March 20, 1894, conveying to said Hay a lot owned by them in the city of Washington upon the same trusts.

*Mr. Leon Tobriner* for the appellants:

1. The deed of assignment does not convey all the property of the debtors, but only the assets of the firm in certain establishments. It is, therefore, fraudulent in law and fact. Where members of a firm, describing themselves as partners, although signing their individual names, made an assignment of all their property, to be divided among all their creditors, naming them separately, it was held that only joint property passed. *Bank* v. *Davis*, 44 N. H. 548; *Goddard* v. *Hapgood*, 25 Vt. 351; *Kennedy* v. *McKee*, 142 U. S. 606.

2. An assignment for the benefit of creditors exacting releases is fraudulent. Burrill on Assign. (6th Ed.), Sec. 150 *et seq.*; Id., Sec. 164; *Whedbee* v. *Stewart*, 40 Md. 420; *Farrow* v. *Hayes*, 51 Md. at 504; *O'Connell* v. *Ackerman*, 62 Md. at 339; *Grover* v. *Wakeman*, 11 Wend. 200; *Miller* v. *Conklin*, 17 Ga. 430; *Wilde* v. *Rawlings*, 1 Head (Tenn.), 34; *Conklin* v. *Carson*, 11 Ill. 508; *Collier* v. *Davis*, 58 Am. Rep. 758 (47 Ark. 367); *Greeley* v. *Dixon*, 58 Am. Rep. 673 (21 Fla. 413); *Dana* v. *Lull*, 17 Vt. 396; *Griffin* v. *Barney*, 2 N. Y. 370; *Henderson* v. *Bliss*, 8 Ind. 103; *Austen* v. *Bell*, 20 John. 442; *Seale* v. *Varden*, 4 Wood C. C. 659; *West* v. *Snodgrass*, 17 Ala. 556; *Duggen* v. *Bliss*, 4 Colo. 223. This is the law in the District of Columbia. *Morrison* v. *Shuster*, 1 Mack. 102, 198; *Hayes* v. *Johnson*, 6 D. C. 177.

In States in which assignments exacting releases are permitted two conditions must concur, viz: The deed must provide for payment of all creditors (those releasing and those who do not) before any reservation of proceeds of sale or other benefits is made to the grantor; and the deed must on its face and by its terms transfer all the debtor's estate, and extrinsic evidence is not admissible to show that, in point of fact, it does transfer all his property. *Sangston* v. *Gaither*, 3 Md. 48; *Rosenberg* v. *Moore*, 11 Md. 24; *Barnitz* v. *Rice*, 14 Md. 24; *Bridges* v. *Hindes*, 16 Md. 104; *Insurance Co.* v. *Wallis*, 23 Md. 182; *Maughlin* v. *Tyler*, 47 Md. 549; *Henderson* v. *Bliss*, 8 Ind. 104; *Butler* v. *Jaffrey*, 12 Ind. 509.

3. The assignment in the present case exacts releases. No other interpretation can be given the words "in satisfaction and release of all debts," etc., other than that the assignee in making payment to creditors shall require of them a release of their claims, or that acceptance of payment from the assignee shall be considered payment in full, whatever the amount so received. *Kennedy* v. *McKee*, 142 U. S. 614; *Sperry* v. *Gallaher*, 77 Iowa, 107; *Hurd* v. *Silsby*, 10 N. H. 108; *Clark* v. *Baker*, 10 S. E. Rep. 615.

It will be contended that the assignment, though fraudulent in exacting releases and in failing to provide for payment of non-releasing creditors, is not thereby rendered void because of the provision of Section 2 of the act of February 24, 1893. This very question has been adjudicated adversely to this contention by the courts of Illinois, from the statutes of which State this act was taken. *Ryhiner* v. *Ruegger*, 19 Ill. App. 156; see also *Hurd* v. *Silsby*, 10 N. H. 108. Our statute does not provide that an assignment shall stand as valid, whether it contains fraudulent provisions or not; but proceedings to set aside an assignment made with fraudulent intent are expressly provided for. Again, the statute only forbids payment of one debt in preference to another, and directs that "all debts and liabilities within the provisions of the assignment shall be paid *pro rata*." The

assignment in the case at bar is not a general one, and the only debts within its provisions and which are directed to be paid, are those due releasing creditors.

4. The appellants were entitled to proceed by attachment. The deed of assignment hinders, delays and defrauds creditors by reason of the fraudulent provisions referred to, and under Sec. 782, R. S. D. C., as amended by the act of February 24, 1893, appellants were entitled to the remedy by attachment. Appellee's contention that the "intent to hinder, delay and defraud" contemplated by the statute was an *actual intent*, in which the court below concurred, is untenable. A distinction is sought to be made between fraud in law and fraud in fact, but for the purposes of this case there is no such distinction.

If the provisions complained of are by the law condemned as fraudulent, the insertion of them in the assignment is conclusive evidence of a fraudulent intent in fact; it is an intent to perpetrate or do something which the law condemns, and fraud in fact is nothing more than this. Wait on Fr. Conv. Sec. 9 *et seq.*; Bump on Fr. Conv. 22 *et seq.*; Burrill on Assign. Sec. 313; *Means v. Dowd*, 128 U. S. 280; *Farrow v. Hayes*, 51 Md. 505; *Abercrombie v. Bradford*, 16 Ala. 560.

The rule contended for was adopted by this court in *Hoover v. Packing Co.*, 1 App. D. C. 273; *vide* also *Chafee v. Blatchford*, 6 Mackey, 459.

The remedy by attachment on the ground of fraud in law was upheld in *Whadbee v. Stewart*, 40 Md. 414. See also *Rice v. Frayser*, 24 Fed. Rep. 460; *Dodd v. Martin*, 15 Fed. Rep. 338; *Beckham v. Lake*, 51 Fed. Rep. 892.

In the following cases attachment upon the ground of a *fraudulent disposition*, evidenced by provisions in conveyances which were *fraudulent in law*, were sustained: *Ryhiner v. Ruegger*, 19 Ill. App. 156; *Sperry v. Gallaher*, 77 Iowa, 107; *Gardner v. Com. Nat. Bank*, 95 Ill. 298; *Henderson v. Bliss*, 8 Ind. 101-103: *Aaronson v. Deutsch*, 24 Fed. Rep. 467; *O'Connell v. Ackerman*, 62 Md. 337.

*Mr. Andrew A. Lipscomb, Mr. Morgan H. Beach,* and *Mr. James B. Green* for the appellees:

1. The assignment is composed of the three contemporaneous deeds. That a general assignment for the benefit of creditors can be collected from several instruments, even widely separated in point of time, is too well settled to admit of argument. Burrill on Assign. (5th Ed.), p. 193, Par. 93, and cases cited.

2. By these deeds the debtors manifest an evident intention to convey all their property, and do so convey. *Wharton* v. *Fisher,* 2 S. & R. 177 ; *Coggill* v. *Botsford,* 29 Conn. 439 ; *Von Wettberg* v. *Carson,* 44 Conn. 287 ; *Dana* v. *Lull,* 17 Vt. 390 ; *Williams* v. *Hadley,* 21 Kan. 260 ; *Judd* v. *Gilbs,* 3 Gray, 541.

3. Whether these deeds convey in trust to the assignee all the property of the assignors, the act of February 24, 1893, 27 Stat. at L. 474, relating to assignments, cures such defect.

4. No releases are exacted in these deeds composing the assignment, and if so the law is not settled that releases invalidate. Burrill on Assign., Par. 149, p. 197 ; Id., Par. 150; *Hollins* v. *Mayer,* 3 Md. Ch. Dec. 343 ; Bump on Fr. Conv., 433 ; *Halsey* v. *Whitney,* 4 Mason, 230 ; *Brashear* v. *West,* 7 Pet. 608. But assuming such a provision for releases in this assignment, it amounts to giving a preference to those who release, and by the Act of February 24, 1893, such provision would be void but the deed valid, and if valid not fraudulent, and if not fraudulent no attachment can be allowed because of this otherwise fraudulent provision.

5. Though fraud in fact and fraud in law are alleged as grounds of attachment, no fraud in fact is proved and no sufficient fraud in law set forth. Fraud in law is not a ground of attachment under the assignment laws of this District. The true rule as to fraud in law as a ground of attachment is laid down in *Peters* v. *Bain,* 133 U. S. 671 ; see also *Talley* v. *Curtain,* 8 U. S. App. 347 ; *Johnson* v. *Thweatt,* 88 Ala. 741.

6. The affidavits upon which the attachment was issued were not sufficient under the requirements of the statute.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The appellants assign the following errors in the proceedings below, upon which they submit that the judgment should be reversed:

1st. "Because the deed of assignment only permits payment on condition that such payments shall be received ' in satisfaction and release' of the claims of creditors so receiving payment.

2d. "Because the assignors reserve to themselves the surplus remaining after paying releasing creditors and before their other creditors are paid.

3d. "Because the said deed does not convey all the property and estate of the assignors and is in effect a partial assignment only."

In support of the judgment it is contended that, (1) The assignment and the deeds of individual members of the partnership must be considered together in arriving at the intent of the assignors; (2) that they show the intent to convey the individual as well as partnership property; (3) that it is not the true intention to limit the benefits of the assignment to creditors who shall release the assignors; (4) that if such be the meaning of the provision, it is made void by the act of February 24, 1893, relating to assignments, without invalidating the conveyance in any other part.

2. We agree with the appellees that the deeds may be considered in connection with the assignment for the purpose of arriving at the true intent and meaning of the parties. One was made on the same day; the other four days later; both refer to the assignment and are in aid of its object, and both antedate the institution of appellant's suit and the suing out of their attachment. Burrell on Assignments, 139, Sec. 93, and authorities cited. See also *White* v. *Cotzhausen*, 129 U. S. 329.

3. Whether the assignment was intended to and did convey the individual property of the assignors, as well as that of the partnership, is not free from grave doubt. In the preamble the names of the individuals are separately set forth, followed by the recital "trading as Johnston Bros. & Co." But these words may be rejected as mere *descriptio personæ*, if to do so is not repugnant to other recitals clearly showing that it was the purpose to act as a partnership only, and not to include the individuals. *Williams* v. *Hadley*, 21 Kan. 350. The instrument expresses the desire to convey "all their property for the benefit of their creditors," and so forth. Like words in instruments of the same kind have very often been held to include the individual or separate property of the several partners, as well as that of the firm. Burrill on Assignments, Sec. 286; *Wharton* v. *Fisher*, 2 S. & R. 178; *Coffin* v. *Douglass*, 61 Tex. 406; *Von Wettberg* v. *Carson*, 44 Conn. 287; *Malcolm* v. *Hodges*, 8 Md. 418; *Williams* v. *Hadley*, 21 Kan. 350.

It will be observed, too, that the assignment purports to assign "all their lots, tenements, and hereditaments," as well as goods, chattels, and so forth, though it contains no apt words of conveyance by which the legal title to any real property could pass to the assignee. It is not to be presumed, especially in connection with the affidavit of the assignors, attached to the instrument and recorded with it, that the partnership owned any real property. And it may well be that the omission to use the proper words of conveyance was intentional, and that the purpose was to leave this to be accomplished through conveyances from the individual partners, who might own real property, as was done by two of them.

It is contended, on the other hand, that the general terms of the conveyance are limited and controlled in their operation by the special enumeration and description following, of what is strictly partnership assets. This descriptive clause, it will be observed, also, is followed by the words, "saving

only such property as is by law exempt from attachment and execution," which are not without force in arriving at the intention and meaning of the instrument. *Union Bank* v. *Bank of Commerce*, 94 Ill. 271. Whilst there is plausibility and some force in appellant's contention on this ground, it must yield to what we conceive to be the general intention to be found "within the four corners" of the instrument in connection with the accompanying deeds. It is a cardinal rule of construction that all parts are to be considered, if possible, in arriving at the general intention of an instrument of this kind, and that, if consistent with the language two constructions can be given, that is to be adopted which will render it legal and operative rather than illegal and void. *Coffin* v. *Douglass*, 61 Tex. 406; *Emigrant I. & S. Bank* v. *Roche*, 93 N. Y. 374; *Bagley* v. *Bowe*, 105 N. Y. 171; *Bank* v. *Dunn*, 67 Ala. 381.

4. Having disposed of the preliminary question raised by the appellees, which included also a discussion of the point made in the third assignment of error, we return to the first, which is next in logical order.

We do not consider it necessary to follow counsel in their ingenious and able discussion of the question whether, by the terms of the instrument, its benefits are reserved for such creditors only as shall release the assignors from all further liability. Nor do we feel called upon to decide whether such reservation or condition would render the assignment void, without the aid of the statute. Granting appellants' contention to the fullest extent, we regard the controversy as settled by the provisions of the act regulating assignments, approved February 24, 1893. That act provides, " That in all cases of voluntary assignments hereafter made in the District of Columbia, for the benefit of creditor or creditors, the debtor or debtors shall annex to said assignment an inventory, under oath or affirmation, of his, her, their or its estate, real and personal, according to the best of his, her, their or its knowledge, and also a list of his, her, their or its creditors,

their respective residences and places of business, if known, and the amount of their respective demands; but such inventory shall not be conclusive as to the amount of the debtor's estate, but such assignment shall vest in the assignee or assignees the title to any other property except legal exemptions, where legal exemptions are reserved by the deed of assignment, belonging to the debtor or debtors at the time of making the assignment and comprehended within the general terms of the same. . . ."

"Sec. 2. That every provision in any assignment hereafter made in the District of Columbia providing for the payment of one debt or liability in preference to another shall be void, and all debts and liabilities within the provisions of the assignment shall be paid *pro rata* from the assets thereof." 27 Stat. at Large, 474.

It is probably to be regretted that this statute is not in express terms comprehensive enough to embrace each and every attempted assignment or conveyance to secure a creditor or creditors, when made by an insolvent person who thereby confesses that he can no longer go on with his business and virtually surrenders dominion of his estate, as well as to provide a complete plan for possession, administration and distribution of insolvent estates. Still, the act contains several important and beneficial provisions which ought to be given operation as far as may be consistent with the general purpose. The act does not control the debtor's action and will not make for him an assignment for the benefit of all creditors when it is plain that such was not his intention. But when he does undertake to make one, and its only defects are within the provisions of the act, it will be considered as a part of the instrument, and its provisions held to annul, and substitute themselves for, conflicting terms and provisions thereof. *Moody* v. *Carroll*, 71 Texas, 143.

The two sections of our act quoted above are identical in language with the first and thirteenth sections of the assignment act of the State of Illinois, from which they are said

to have been copied. In a case arising under the Illinois act, Mr. Justice Harlan, speaking for the Supreme Court and following the decisions of the Supreme Court of Illinois, used the following language, which we adopt as expressing the spirit in which our statute should be construed and given operation: "We agree with the Supreme Court of Illinois that this statute, being remedial in its character, must be liberally construed; that is, 'construed largely and beneficially, so as to suppress the mischief and advance the remedy.' That court said in *Chicago, &c., RR.* v. *Dunn,* 52 Ill. 260, 263: 'The rule in construing remedial statutes, though it may be in derogation of the common law, is that everything is to be done in advancement of the remedy that can be done consistently with any fair construction that can be put upon it. . . .' If then we avoid overstrict construction, and regard substance rather than form; if effect be given to this legislation as against mere devices that will defeat the object of its enactment, the several writings executed by Alexander White, Jr., all about the same time, to his mother, sisters and brother, whereby in contemplation of his bankruptcy, and according to a plan previously formed, he surrendered his entire estate for their benefit, to the exclusion of all other creditors, must be deemed a single instrument, expressing the purposes of the parties in consummating one transaction, and operating as an assignment or transfer under which the appellee, Cotzhausen, may claim equality of right with the creditors so preferred." *White* v. *Cotzhausen,* 129 U. S. 341. Again, it was said in the same case, after quoting the first and thirteenth sections: "The main object of this legislation is manifest. It is to secure equality of right among the creditors of a debtor who makes a voluntary assignment of his property. It annuls every provision in any assignment giving a preference to one creditor over another. No creditor is to be excluded from participation in the proceeds of the assigned property because of the failure of the debtor to make and file the required inventory of his

estate and a list of his creditors.   Nor, if such a list is filed, is any creditor to be denied his *pro rata* part of such proceeds because his name is omitted either by design or mistake upon the part of the debtor.   The difficulty with the courts has not been in recognizing the beneficient objects of this legislation, but in determining whether, in view of the special circumstances attending their execution, particular instruments are to be treated as part of an assignment, within the meaning of the statute."

Looking at our statute in this light, we are of the opinion that the attempt, if such in fact it were, to limit the benefit of the trust to such creditors only as shall release their demands if not paid in full, is a preference within the meaning of the words, "Every provision in any assignment hereafter made in the District of Columbia providing for the payment of one debt or liability in preference to another shall be void, and all debts and liabilities within the provisions of the assignment shall be paid *pro rata* from the assets thereof."

5. Under the second assignment of errors, it is contended that the instrument must be declared void because of the reservation of the surplus for the benefit of the assignors in these words of the trust: " To repay to the said parties of the first part, their executors, administrators, or assigns, the residue of the said proceeds, should there be any."   As sought to be applied to this case the proposition is not sound.

The effect of such reservation must largely depend upon other conditions and surrounding circumstances.   In the case of *Kansas City Packing Co.* v. *Hoover*, 1 App. D. C. 268, we held that a reservation of benefits to the assignor, along with other vicious provisions to the same end, was fatal to the assignment, but the terms and conditions thereof were quite different from those of the instrument now under consideration ; besides it was made long before the passage of the act relating to assignments.   We were careful, too, in

that case, to say : " The proposition, however, that the mere reservation of the surplus for the benefit of the assignor or grantor will vitiate the instrument under all circumstances, is rather too broad for our acceptance ; for this is the condition that, in equity, attaches to all conveyances of this kind, and where the instrument is apparently in the nature of a mortgage to secure certain debts, or such an assignment as provides for the payment of all indebtedness, without restriction, before the reservation can become operative, and there are no other objectionable features, we do not see how it can reasonably be held void." Harm could only result from this reservation where the benefits of an assignment are limited to a few or to a class, because it would then operate to hinder and delay creditors not provided for in the trust. But as we have held that the property here assigned must be distributed, by virtue of the statute, among all the creditors, without preference, the reservation clause is perfectly harmless, and amounts to nothing more than the expression of a condition necessarily implied, and which a court of equity would recognize and enforce upon proper occasion.

6. Some questions of practice remain now to be considered. It is contended on behalf of appellees that the process of attachment, under our statute, ought not to run against property that has been assigned for the benefit of creditors except for " fraud in fact," or *actual* fraud, as contradistinguished from "fraud in law," or fraud that is presumed to exist from the character of the instrument itself.

There is no merit in this contention. The effect of fraud in fact and fraud in law is the same ; each renders the conveyance void as against the creditors of the assignor. The distinction between the two lies in the means employed to establish the fact, and not in the consequences which result from its establishment. In one case the fraud is proved by extrinsic evidence ; in the other it is established by an indisputable presumption of law founded in the terms and

conditions of the instrument itself. To certain stipulations "the law imputes a fraudulent purpose." *Means* v. *Dowd*, 128 U. S. 287. Where an instrument contains provisions, the necessary legal effect of which is to work a fraud upon creditors, the assignor is conclusively presumed to have intended the reasonable consequences of his own act, and will not be heard with proof that his motive was not in fact evil. *Malcolm* v. *Hodges*, 8 Md. 425; *Farrow* v. *Hayes*, 51 Md. 498; *Kansas City Packing Co.* v. *Hoover*, 1 App. D. C. 268; *Ryhiner* v. *Ruegger*, 19 Ill. App. 156. In this last case it was well said of the effect of this imputed fraud, or fraud in law: "Actual fraudulent intent is as clearly manifest and as conclusively established as though found by the verdict of a jury."

We have seen but one case in which the correctness of the prevalent practice of attaching property assigned by insolvent debtors for "fraud in law" has been assailed, and in that it was unhesitatingly affirmed. *Whedbee* v. *Stewart*, 40 Md. 414.

7. Another objection to the right to attach is founded in the third section of the assignment act, which reads as follows:

"Sec. 3. That any creditor of an assignor may proceed in equity to attack the assignment as made to hinder, delay or defraud the creditors of the assignor, without first reducing his, her, their, or its claim against the assignor to judgment at law, and may, in such equity proceeding prove that he, she, they, or it is, or are, a creditor or creditors and as such entitled to relief."

It is claimed that the remedy thus given is exclusive. We regard it rather as cumulative. To be treated as exclusive the intent must be plainly expressed or necessarily implied. The apparent intention, we think, was simply to give concurrent jurisdiction in equity to the cases of simple contract creditors who might prefer to seek relief in that way. This view finds some confirmation also in the fourth section of

the same act, which amends Sec. 782, R. S. D. C., relating to attachments, by adding an additional ground therefor, which is the one made the basis of attachment in this case.

8. The affidavits upon which the attachment was sued out are also objected to as not being in conformity with the law authorizing attachments. Sec. 782, R. S. D. C. The affidavit of the plaintiff* makes the direct charge that de-

---

*Plaintiff's affidavit.—I, George W. Cissel, on my oath do depose and say that I am a member of the firm of "G. W. Cissel & Co." composed of George W. Cissel and S. Sewell Cissel, who are named as plaintiffs in the declaration filed in this cause; that Willis Johnston, Harry B. Johnston, William J. Johnston, and Walter D. Johnston, copartners, trading under the firm name and style of Johnston Bros. & Co., who are named in the said declaration as defendants, are indebted to the said firm of "G. W. Cissel & Co." in the sum of two thousand four hundred and thirty $\frac{70}{100}$ ($2,430.70) dollars with interest thereon from the twentieth day of March, 1894, which said sum is due from the said defendants to the said plaintiffs for goods, wares, and merchandise sold and delivered by the said plaintiffs to the said defendants.

The affiant further says that a correct itemized account of the goods, wares, and merchandise so sold and delivered by the plaintiffs to the defendants is annexed to the declaration in this cause filed, marked particulars of demand; that the said itemized account is correct and true; that the goods and merchandise for which the charges in said account were made were sold and delivered by the plaintiffs to the said defendants; that the prices charged therein are reasonable and just, and were agreed to therein by the defendants at the time of purchase and sale; that no portion of the principal sum or interest due upon the said account has been paid or satisfied or secured in any manner whatsoever; that the whole thereof is now overdue, and that there is now due from the defendants to the said plaintiffs on said account the said sum of two thousand four hundred and thirty $\frac{70}{100}$ ($2,430.70) dollars, with interest thereon from the twentieth day of March, A. D. 1894, exclusive of all set-offs and just grounds of defense; that the said sum as aforesaid is claimed by the plaintiffs in their declaration filed.

And affiant further avers and says the said defendants have assigned, disposed of, and secreted property with intent to hinder, delay, and defraud their creditors, and the grounds upon which this affiant made this affidavit are as follows:

That the said defendants for some time prior to the sixteenth (16) day of March, A. D. 1894, had been engaged in the conduct of the retail grocery and provision business in the city of Washington, D. C., doing business in premises numbered seven hundred and twenty-nine (729) Seventh street northwest and No. 639 and in part of premises numbered six hundred and forty-one (641) Louisiana avenue northwest, and in the conduct of said business have incurred liabilities for goods, wares, and merchandise purchased by them for the same in the sum of forty thousand dollars ($40,000.00), as the said defendants have admitted; that on the sixteenth day of March, A. D. 1894, the said defendants, describing themselves as copartners and as trading under the firm name and style of "Johnston Bros. & Co.," executed to one Edwin B. Hay an alleged deed of assign-

fendants have disposed of their property, and so forth, in the language of the statute. We have recently held that it is ordinarily sufficient in an affidavit for attachment to follow the words of the statute substantially without stating the probative facts which go to show the ultimate conclusion. *Wielar* v. *Garner, ante,* 329. The affiant in this case did not stop with this statement, of the cause of attachment, but

---

ment for the benefit of their creditors, wherein, after reciting their inability to pay their debts, they attempted to convey to the said Hay all their lots, tenements, hereditaments, goods, chattels, rights, and effects of every name, nature, and description, consisting of wares, merchandise, stock in trade, and bills receivable in their business houses, 729 Seventh street, 639 Louisiana avenue, and part of premises 641 Louisiana avenue, together with the fixtures therein contained, and 16 horses and twenty wagons in the stables of G. F. Draney, in trust, among others, to the said Hay to sell and dispose of the said property so conveyed "at said assignee's discretion, as may be best for the creditors hereinafter named, and with power to compound, adjust, or settle for the same or in any part thereof and apply the proceeds thereof as follows:

"To pay all costs and charges of these presents and the lawful expense of executing the trust hereby created; to distribute the remainder of said proceeds ratably and in equal proportions to the creditors of the said Johnston Bros. & Co. in satisfaction and release of all debts owing by the said parties of the first part;" all of which will more fully appear on reference to a certified copy of the said deed of assignment annexed to and filed with this affidavit as part thereof, marked Exhibit G. W. C. No. 1, the same having been recorded among the land records for said District March 16th, 1894.

Affiant further says that he is informed by counsel and believes that the said deed of assignment was executed by the said assignors with intent to hinder, delay, and defraud their creditors and is fraudulent in fact and in law, because, first, the assignors therein have not annexed to the same an inventory, under oath or affirmation, of their estate, real and personal, according to the best of their knowledge; second, because the assignors therein have not annexed to the said assignment, under oath or affirmation, a list of their creditors, their respective residences and places of business, and, third, because the said assignment makes as a condition precedent to a creditor of the said assignors participating in the proceeds to be realized therefrom a release by the said creditors of their claims and demands against the said assignors; fourth, because the said assignment provides and directs the assignee to distribute the proceeds derived thereunder to the creditors of the said assignors in satisfaction and release of all debts owing by the said assignors to the said creditors; fifth, because the said deed of assignment creates, gives, and makes a preference to such creditors of the said assignors as are willing to release and satisfy their claims upon receiving distribution under the said deed of assignment; sixth, because the said deed of assignment provides that such creditors only shall participate thereunder as are willing to receive payment from the assignee in full settlement, satisfaction, and discharge of their respective claims; seventh, because the said deed of assignment does not comply with the provisions of an act of Congress entitled "An act relative to

proceeded at length to state the grounds of his conclusion, all of which are founded in the stipulations of the assignment which are claimed to show fraud.

It was unnecessary, as we have said, to add the grounds of the witnesses conclusion that the property had been disposed of to defraud creditors; but doing so does not affect the affidavit. To supply the requirement of the statute that the plaintiff's affidavit must be "supported by the testimony of one or more witnesses," the attorney for the plaintiffs made an affidavit* in which he referred to the terms of

voluntary assignments by debtors for the benefit of creditors in the District of Columbia, and to amend section seven hundred and eighty-two of the Revised Statutes of the United States relating to the District of Columbia," approved February 24th, A. D. 1893, but is in direct contravention thereof.

And the affiant further avers and says on information and belief that the said deed of assignment was executed by the said assignors with the intent to hinder, delay, and defraud their creditors; that he is informed by Leon Tobriner, his attorney, and believes that the representative of the assignee, to wit, one James B. Green, who is in charge of one of the stores mentioned in the said deed of assignment, and who is one of the attorneys for the said assignors, being connected with the law office of Edwin B. Hay, the assignee, stated to him, said Tobriner, that the said assignors executed the said deed of assignment because they feared that their property would be attached by creditors and hoped by such execution to be enabled to make and obtain some arrangements with their creditors by which they could continue their business. The affiant is further informed by the said Leon Tobriner and believes that the said Green stated to him, the said Tobriner, that the said assignee was making purchase of goods, wares, and merchandise for the purpose of continuing the said business.                                          George W. Cissel.

*Attorney's affidavit.—I, Leon Tobriner, do on my oath depose and say that I am the attorney for the plaintiffs in this cause, wherein Willis Johnston, Harry B. Johnston, William J. Johnston, and Walter D. Johnston, copartners, trading under the firm name and style of Johnston Bros. & Co., are defendants. I have carefully examined the alleged deed of assignment executed by the said firm of Johnston Bros. & Co., bearing date the sixteenth (16) day of March, A. D. 1894, and recorded among the land records for the District of Columbia on the sixteenth (16) day of March, A. D. 1894, a certified copy of which is filed with the affidavits in this cause in support of attachment, and am of opinion that the same is invalid, illegal, insufficient, and fraudulent in law for the reasons, among others, as follows: Because, first, the assignors therein have not annexed to the same an inventory, under oath or affirmation, of their estate, real and personal, according to the best of their knowledge; second, because the assignors therein have not annexed to the said assignment, under oath or affirmation, a list of their creditors, their respective residences and places of business; third, because the said assignment makes as a condition precedent to a creditor of the said assignors participating in the proceeds realized thereunder a release by the said creditors of their

the assignment and said : " I am of opinion that the same is invalid, illegal, insufficient and fraudulent in law, for the reasons," and so forth. We think this affidavit was, under the circumstances, sufficient.

The assignment was referred to in the affidavit as showing upon its face the existence of the fraudulent intent of the assignors. Had the witness sworn to the existence of fraud as a fact, without referring to the instrument as containing the evidence thereof, it would have been sufficient, and yet

claims and demands against the said assignors ; fourth, because the said assignment directs and requires the assignee to distribute the proceeds derived thereunder to the creditors of the said assignors in satisfaction and release only of all debts owing by the said assignors to the said creditors ; fifth, because the said deed of assignment creates, gives, and makes a preference to such creditors of the said assignors as are willing to release and satisfy their claims upon receiving distribution under the said deed of assignment; sixth, because the said deed of assignment provides that such creditors only shall participate thereunder as are willing to receive payment from the assignee, whatever may be the amount so received, in full settlement, satisfaction, and discharge of their respective claims ; seventh, because the said deed of assignment does not comply with the provisions of an act of Congress entitled " An act relative to voluntary assignments by debtors for the benefit of creditors in the District of Columbia, and to amend section seven hundred and eighty-two of the Revised Statutes of the United States relating to the District of Columbia," passed by the Congress of the United States and approved February 24th, A. D. 1893, but is in direct contravention thereof.

" The affiant further avers that on the nineteenth (19) day of March, A. D. 1894, he called at the store of the said Johnston Bros. & Co., numbered 729 Seventh street northwest, in the city of Washington, D. C., for the purpose of making some inquiries in reference to the collection of the account sued on in this cause, and there saw one of the said defendants, Harry B. Johnston, who, upon the affiant stating his mission, referred him to one James B. Green, a member of the bar of this court, and who was represented by the said Johnston as, and who himself claimed to be, the representative of Edwin B. Hay, the assignee mentioned in said deed of assignment; that the said Green stated to the affiant that the said assignors, finding themselves unable to meet their maturing indebtedness and fearing that their assets would be attached by creditors, had executed the said deed of assignment with the expectation that they would be thereby enabled to make some arrangement with their creditors by which they could continue the business ; that it was the intention of the assignee, for whom the said Green was then acting, to make a payment of ten (10) per cent. a week for six weeks to the creditors under the said deed of assignment, and after that it was uncertain what action would be pursued until it could be ascertained whether the creditors would grant an extension of time ; that the assignee, for the purposes of continuing the said business, was making purchase of such goods, wares, and merchandise as were needed in the said business and were out of stock.                                                    LEON TOBRINER.

4 Ct. App.—23

his conclusion would necessarily have been the result of his opinion merely as to the legal effect of its conditions and trusts.  As his only claim of fraud was that imputed by law, as he believed, to the conditions of the assignment it was candid and commendable so to state; and whilst we have, not without some doubt, differed from his opinion as regards the legal effect of the instrument, it does not follow that he was not justified in maintaining by oath the soundness of his own opinion.  This case is exceptional and we are not to be understood as holding that under ordinary circumstances an affidavit will be sufficient which merely states the witness' belief of the existence of a fact.

The chief reason for excluding an affidavit for attachment based upon mere belief is the difficulty in assigning perjury thereon in case of willful falsehood.  But this difficulty is not, under all circumstances, insuperable, though it may be admitted that, ordinarily, a witness can not be punished for perjury in swearing to the construction of a written instrument.  On this point it has been said by a learned writer on the criminal law, that, " Generally such a question will be for the court, and evidence to it irrelevant, therefore not a foundation for perjury ; but in cases involving this principle, no reason appears why, if a witness swears to a construction which he knows to be wrong and the proof of his corruption is ample, he should not be liable as a perjurer the same as for any other false swearing." 2 Bishop Cr. Law, 7th Ed., Sec. 1040.

It follows from what has been said that *there is no error in the proceedings on the trial for which the judgment should be reversed ; and it is therefore affirmed, with costs to the appellees.*